**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donard Anthony CLEMENTS, also known
as Donald Anthony Clements,
Defendant-Appellant.**

**No. 71-1753.**

United States Court of Appeals,
Ninth Circuit.

Dec. 26, 1972.

Robert A. Kantor, San Francisco, Cal.,
for defendant-appellant.

Dwayne Keyes, U. S. Atty., William B.
Shubb, Asst. U. S. Atty., Sacramento,
Cal., for plaintiff-appellee.

Before BROWNING, HUFSTEDLER and WRIGHT, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Clements appeals from his conviction for violating the National Firearms Act (26 U.S.C. § 5861(c), (d) and (f)). He contends that the evidence was insufficient to sustain his conviction, that an illegal search may have tainted a search warrant, and that his sentence was invalid.

■ It was stipulated at trial that Clements had not paid a making tax or registered as a maker of a firearm covered by the Act. The only contested factual issue was whether or not Clements made the Molotov cocktail that was thrown through the window of a police officer's home. Although the evidence connecting Clements with the making of the Molotov cocktail was largely circumstantial, it was adequate to prove the Government's case.

■ Clements argues that the foundation for a search warrant that had been used to produce incriminating evidence may have rested, in part, on a warrantless search of Clements' refuse container. We decline to reach the question of the legality of the warrantless search because the point was never raised below and the facts supporting the claim were not developed.

■ Clements' third contention has merit. He was found guilty upon each of the three counts of an indictment charging him with: (1) possession of a firearm upon which the making tax had not been paid, in violation of 26 U.S.C. § 5861(c); (2) possession of a firearm which had not been registered, in violation of 26 U.S.C. § 5861(d); and (3) unlawfully making a firearm, in violation of 26 U.S.C. § 5861(f). Clements was sentenced to ten years' imprisonment upon each count, and the sentences were ordered served consecutively. Under 26 U.S.C. § 5871, ten years' imprisonment is the maximum sentence that may be imposed for "any" violation of the Act.

The effect of the Government's construction of the Act, which the district court adopted, was to divide the single transaction of unlawfully making a firearm into three separate offenses, which could be aggregated to pyramid punishment. Possession of a firearm unlawfully made is separated from unlawful making, although possession is always incidental to making by the person who is the maker. The possession violation is further subdivided into two offenses: (a) possessing a firearm made without paying the tax, and (b) possessing a firearm made without prior registration.

■ The issue is not whether Congress could have authorized the imposition of cumulative sentences for the offenses with which Clements was charged. There is no constitutional impediment to Congress' authorizing cumulative sentences for a single act that may violate more than one statute when the offenses created by the statutes are not identical. The offenses with which Clements was charged are not identical because a different set of ultimate facts is necessary to sustain a conviction under each count. Proof of making necessarily proves possession, but proof of possession does not necessarily prove making. The difference between the ultimate facts necessary to prove failure to pay a tax and failure to register is obvious. (See, e. g., Carter v. McClaughry (1902) 183 U.S. 365, 394–395, 22 S.Ct. 181, 46 L.Ed. 236; Toliver v. United States (9th Cir. 1955) 224 F.2d 742, 744.)

■ The issue in this case is one of statutory interpretation. The question is whether Congress intended to exercise its power to authorize cumulative sentences for Clements' single transaction that violated more than one section of the Act. Unless we can find from the face of the Act or from its legislative history a clear indication that Congress intended to authorize multiple punishments for a single transaction, we are obliged to construe the Act against the harsher penalties that result from cumulative punishments. (Milanovich v.

United States (1961) 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773; Heflin v. United States (1959) 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407; Ladner v. United States (1958) 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199; Prince v. United States (1957) 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370; Bell v. United States (1955) 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905; United States v. Universal C.I.T. Credit Corp. (1952) 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260; In re Snow (1887) 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658; *cf.* United States v. Bass (1971) 404 U.S. 336, 92 S.Ct. 515, 30 L. Ed.2d 488; Rewis v. United States (1971) 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493.)

In order lawfully to make a firearm covered by the Act, the maker must (1) file an application with the Secretary of the Treasury to make the firearm and to register it, and (2) pay a making tax by buying a stamp. (26 U.S.C. §§ 5821, 5822, 5841(c).) Under the terms of 26 U.S.C. § 5861, specified acts or omissions by firearm makers and others, including the acts and omissions here charged, are declared unlawful. The penalty prescribed is found in 26 U.S.C. § 5871, which provides that anyone "who violates or fails· to comply with any provision of the chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both."

The statutory scheme is facially susceptible to two possible interpretations: Congress intended to authorize imposition of triple punishment of a person who possessed a firearm that he made without registering and paying the tax. Congress did not intend to authorize more than one punishment of one person who possessed a firearm that he made without registering or paying the tax; its purpose in creating separate offenses for making, for possession without registering, and for possession without paying the tax was to prevent avoidance of criminal liability by a person who performed only one of the proscribed acts or who omitted only one of the required

acts. Had Congress clearly intended to authorize cumulative punishment it could have done so easily by writing a statute that authorized ten years' imprisonment for possession of an unlawfully made firearm, twenty years' imprisonment if the possession were incident to unlawful making of the firearm, and thirty years' imprisonment if the possessor-maker had failed both to register and to pay the tax. It did not do so, and there is nothing on the face of the Act which indicates a clear intent to impose multiple punishments.

The legislative history of the National Firearms Act is rather complex, but we have found nothing in it which indicates a congressional intent to impose cumulative punishment on one who unlawfully makes a firearm. As originally enacted, the Act did not proscribe the unlawful making of a firearm. The original Act imposed a tax and registration requirement upon manufacturers, importers, dealers and transferors of certain firearms, and it made it unlawful to possess a firearm which had been unlawfully transferred. (Act of June 26, 1934, ch. 757, 48 Stat. 1236.)

Like the present law, the original Act made "any" violation of the Act a crime, but nothing in the legislative history of the original Act indicates that Congress intended to authorize double punishment for manufacturers, importers, dealers, or transferors who failed both to register and to pay the tax. The transfer tax and registration requirement were imposed on transferors. The only possession that was made punishable was the possession of a firearm that had been unlawfully transferred. Therefore, as the statute was originally enacted, there was no possibility that punishment for an unlawful act (manufacture, importation, transfer) could be doubled by adding a charge of possession incident to that act.

Makers of firearms were brought within the purview of the Act by a 1952 amendment. Like the prior provisions, this amendment imposed a duty on makers both to register and to pay a tax.

By the same Act, the possession proscription in the law was amended to make unlawful the possession of a firearm illegally made. (*Act of May 21, 1952, ch. 320, 66 Stat. 87.*)

Again, there is nothing in the legislative history of this amendment indicating that Congress intended to authorize double punishment of a maker who failed both to register and to pay the tax, or to authorize double punishment of the maker by reason of his incidental possession of the firearm he made. The purpose of the amendment was to make subject to the Act those persons who acquired weapons not covered by the Act and who converted them for personal use into firearms restricted by the Act:

> "Since the effective control over fully automatic firearms, such as machine guns and machine pistols, has made it difficult for criminals to obtain such firearms, the sawed-off shotgun has become the favorite offensive weapon of such criminals. By the comparatively simple device of purchasing standard shotguns from legitimate dealers and then sawing off the barrels to a length of less than 18 inches, criminals are able to make vicious weapons without incurring the penalties of the act. Since such weapons are seldom transferred after the barrels have been sawed off, the owners cannot be prosecuted for possession of a firearm unlawfully transferred. Hence, the act does not reach

those who possess sawed-off shotguns made in this manner. It is this defect in the act which the bill is designed to correct."

(H.R.Rep.No. 1714, 82nd Cong., 2nd Sess. (1952), U.S.Code Cong. and Ad. News, pp. 1454, 1455–56.) The only explanation of the amendment that made it unlawful to possess a firearm illegally made is found in the House Report:

> "Section 3 of the proposed bill adds certain technical amendments which are made necessary by the addition of section 2734, provided for in section 1 of the bill. . . .

> "Sections . . . 2726(a) [concerning unlawful possession of firearms] . . . are amended to make such sections conform with the . . . proposed section 2734 (sec. 1 of this bill) [which imposes a tax and registration requirement on makers of firearms]."

(*Id.* at p. 1456.)

The possession provision was further amended in 1958 to make unlawful the possession of an unregistered firearm. (*Act of Sept. 2, 1958, P.L. 85–859, § 203(h)(1), 72 Stat. 1428.*) The Senate and House Reports said that the purpose of the amendment was to "simplify and clarify the law and to aid in prosecution." (S.Rep.No. 2090, 85th Cong., 2nd Sess. (1958), U.S.Code Cong. and Ad. News, p. 4604; H.Rep.No. 481, 85th Cong., 1st Sess. (1957), 197.) [1]

---

1. "Existing law (sec. 5851) specifically defines as an unlawful act the receipt or possession of any firearm which has been transferred or made in violation of law, but fails to so define the possession of an unregistered firearm. The amendment of this section specifically defines such possession of an unregistered firearm as an unlawful act and makes applicable to such possession the presumption contained in the section. The primary purpose of this change is to simplify and clarify the law and to aid in prosecution." (S.Rep.No. 2090, 85th Cong. 2nd Sess., 1958 U.S. Code Cong. and Ad.News, p. 4604; H. Rep.No.481, 85th Cong. 1st Sess., 1957, 196–97.)

This amendment made it unlawful to possess a firearm not registered in conformance with former 26 U.S.C. § 5841. (Act of June 26, 1934, ch. 757, § 5, 48 Stat. 1238, as amended by Act of May 21, 1952, ch. 320, § 3, 66 Stat. 88.) Former 26 U.S.C. 5841 required every person who possessed a firearm which had not been transferred, imported, or made in conformance with the Act to register the firearm. That the section was not intended to create a cumulatively punishable separate offense from that of failing to register in conformity with the Act upon transferring, importing, or making a covered firearm is evident from the 1968 redraft of the Act. 26 U.S.C. § 5841(c),

After the Supreme Court struck down the registration provisions of the Act on the ground that they infringed the Fifth Amendment privilege against self-incrimination (Haynes v. United States (1968) 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923), Congress rewrote the Act as part of the Gun Control Act of 1968. In the 1968 version, Congress expanded the definition of regulated firearms to include destructive devices, such as Molotov cocktails (26 U.S.C. § 5845(a) and (f)), and increased the authorized penalties for failure to comply with any provision of the Act from a maximum of five years' imprisonment and a two-thousand-dollar fine to a maximum of ten years' imprisonment and a ten-thousand-dollar fine (26 U.S.C. § 5871). Although there was some discussion of the increased penalties authorized, again there is nothing in the legislative history of the 1968 redraft to suggest any congressional intent to authorize imposition of cumulative punishments of a maker of an unlawful firearm either on account of his incidental possession or on account of his failure to register and to pay tax.

The relevant portions of the Senate Report on this bill are as follows:

*"Section 5861*

"This section sets forth certain specific prohibited acts which it is unlawful for any person to perform. A person performing any such act is subject to the penalties set forth in section 5871. The section is derived from sections 5851 through 5855 of existing law. The provisions have been simplified, restated, and clarified. By reason of the revisions in this chapter and related changes in law, it is intended to be able to prosecute effectively persons who perform any of these prohibited acts, notwithstanding the decision in Haynes v.

United States, 390 U.S. 85 [88 S.Ct. 722, 19 L.Ed.2d 923]. The Court in the *Haynes* case stated that the decision did not preclude taxation or effective regulation of firearms. The changes made in this chapter are intended to reconcile the provisions of this chapter and related provisions of law with the *Haynes* decision. . . ."

*"Section 5871*

"This section provides that a person who violates or fails to comply with any provision of this chapter shall be fined not more than $10,000 or be imprisoned not more than 5 years or both. It is a restatement of existing law. The phrase 'at the discretion of the Court' was deleted as unnecessary."

(S.Rep.No. 1501, 90th Cong., 2nd Sess. (1968), 51–52.)

In summary, the legislative history of the Act gives us no direction that Congress intended to authorize cumulative punishment. The fact that "any" violation of the Act is made a crime is susceptible to a contrary implication, and there are even a few hints that Congress did not intend to authorize multiple punishments.

We conclude that the Act should be construed against the authorization of pyramided punishments for the single transaction herein involved. We apply the principle enunciated by the Supreme Court in Prince v. United States, *supra*, 352 U.S. at 329, 77 S.Ct. at 407, a case posing a similar problem arising under the Bank Robbery Act of 1934:

"While reasonable minds might differ on this conclusion, we think it is consistent with our policy of not attributing to Congress, in the enactment of criminal statutes, an intention to punish more severely than the lan-

---

as redrafted, clearly provides that the only registration applicable to a maker is that required of him before he makes. 26 U.S.C. § 5861(d), under which Clements was charged, provided that it is un-

lawful to possess an unregistered firearm without reference to any particular section imposing the registration requirement.

guage of its laws clearly imports in the light of pertinent legislative history."

(*See also* Milanovich v. United States, *supra,* 365 U.S. 551, 81 S.Ct. 728, 5 L. Ed.2d 773; Heflin v. United States *supra,* 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407; Ladner v. United States, *supra,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed. 2d 199; Bell v. United States, *supra,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905; United States v. Universal C.I.T. Credit Corp., *supra,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260; In re Snow, *supra,* 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658; *cf.* United States v. Bass, *supra,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488; Rewis v. United States, *supra,* 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493.) [2]

This case is unlike Gore v. United States (1958) 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405, rehearing denied, 358 U.S. 858, 79 S.Ct. 13, 3 L.Ed.2d 92; Blockburger v. United States (1932) 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, and their progeny, where cumulative sentences for separate violations of certain narcotics control laws resulting from one transaction have been upheld. In both *Blockburger* and *Gore* the separate offenses with which the defendants were charged were created by Congress at different times, and the background of the several statutes led to the conclusion that Congress did intend to authorize multiple punishments for the several offenses. (Gore v. United States, *supra,* 357 U.S. at 389-391, 78 S.Ct. 1280.) In this case, all of the offenses charged are rooted in one legislative enactment (the 1952 amendment), and there is nothing in the history of that enactment, the history of the prior provisions upon which it was modeled, or the history of

subsequent recodifications of the law which clearly suggests that Congress intended to authorize multiple punishments for the single transaction involved.

The conviction is affirmed. The sentence is vacated and the cause is remanded to the district court for resentencing to a term not to exceed the maximum punishment that can be imposed for a single count of the indictment upon which Clements has been convicted.

---

2.  Superficially, some prior decisions of this court appear to be to the contrary, but they are not: Fleish v. Johnston (9th Cir. 1944) 145 F.2d 16, cert. denied (1945), 324 U.S. 840, 65 S.Ct. 587, 89 L.Ed. 1402; Crapo v. Johnston (9th Cir. 1944) 144 F.2d 863, cert. denied, 323 U.S. 785, 65 S.Ct. 267, 89 L.Ed. 626, rehearings denied (1945), 323 U.S. 818, 65 S.Ct. 428, 89 L.Ed. 650, 324 U.S. 886, 65 S.Ct.

682, 89 L.Ed. 1435. These cases were decided before the making provisions, with which we are concerned, were enacted; they deal with transfer provisions. Moreover, the legislative history of the Act was not reviewed and these cases were decided without benefit of the teaching in *Prince* and other recent Supreme Court decisions cited above.