**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**German HERNANDEZ–MIRANDA,
Defendant-Appellant.**

No. 78–2218.

United States Court of Appeals,
Ninth Circuit.

Aug. 7, 1979.

Frank T. Vecchione, Kenneth R. McMullan (argued), San Diego, Cal., for defendant-appellant.

John J. Robinson, Asst. U.S. Atty. (on the brief), Michael H. Walsh, U.S. Atty., John J. Robinson, Asst. U.S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before HUFSTEDLER and ANDERSON, Circuit Judges, and FIRTH,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

German Hernandez-Miranda was convicted of importing heroin, possession of heroin with intent to distribute, and making a false claim of United States citizenship. He appeals, claiming that the district court erred by giving an instruction on flight, admitting evidence on the amount of his bond forfeiture and prior conviction, and imposing consecutive sentences.[1] We find no error justifying reversal and affirm.

## FACTS

On September 4, 1976, German Hernandez-Miranda (Miranda) was stopped while driving his car through the Port of Entry at San Ysidro, California, from Mexico to California. When asked about his citizenship by a customs inspector, Miranda replied that he and his son, who was riding with him, were United States citizens.

At the customs inspector's request, Miranda opened the trunk of the car and the deck plate to the spare tire compartment. After pulling a brown paper bag out from under the fender well near the spare tire, the customs inspector noticed two other bags. One contained approximately one pound of brown Mexican heroin, the other contained approximately two pounds of procaine, a heroin "cutting" substance.

The customs inspector asked Miranda what was in the bags and he responded: "I just got the car. I just bought the car."[2] After being escorted to the secondary search area, Miranda voluntarily admitted that he was not an American citizen.

On September 15, 1976, a three-count indictment was filed against Miranda. Count I charged him with illegal importation of heroin in violation of 21 U.S.C. §§ 952, 960,

---

* The Honorable Robert Firth, United States District Judge, Central District of California, sitting by designation.

1. Jurisdiction of the district court was based on 18 U.S.C. § 3231. This court's jurisdiction is proper under 28 U.S.C. § 1291.

2. The car had been purchased by Miranda's wife on July 8, 1976.

963. Count II charged him with possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Count III charged him with making a false claim of citizenship in violation of 18 U.S.C. § 911. (Counts I and II are referred to as the heroin counts or charges, and Count III is referred to as the immigration count or charge.)

Miranda was released from custody on October 13, 1976, when a $50,000.00 bond was posted on his behalf. The bond consisted of a $30,000.00 cash bond and a $20,000.00 corporate surety bond. The corporate surety bond was secured by trust deeds on the houses of Miranda's brother and sister, who served as sureties.

Miranda's trial date was scheduled for February 15, 1977. Beginning on February 11, 1977, cash was substituted for the property which secured the bonds. When Miranda failed to appear for his scheduled trial, the bonds posted on his behalf were forfeited. Evidence surrounding this failure to appear or "flight" was introduced at his trial.

Miranda was re-arrested in January of 1978. On April 12, 1978, a jury returned a guilty verdict on all three counts which had been filed against him in 1976. On May 22, 1978, Miranda was sentenced to fifteen years on the heroin counts, and three years on the immigration count. The three-year sentence was ordered to run consecutively to the fifteen-year sentence.

## THE FLIGHT INSTRUCTION

On appeal, Miranda makes three arguments as to why the trial court erred by giving the flight instruction.[3] First, he claims that there is an "immediacy" requirement which was not satisfied since the flight occurred over five months after his arrest. Second, there were several other reasons which could support his decision to take flight. And finally, Miranda argues that the jury should have been instructed that flight must be proven beyond a reasonable doubt before it can be considered as showing consciousness of guilt.

■ We agree with Miranda that in some cases the flight instruction should not be given unless the defendant has fled immediately after the commission of a crime. However, this immediacy requirement generally only becomes important in those cases where the defendant does not know, or his knowledge is doubtful, about the charges and accusations made against him.[4] *United States v. Jackson*, 572 F.2d 636, 641 (7th Cir. 1978); and *cf. Shorter v. United States*, 412 F.2d 428, 430 (9th Cir. 1969), *cert. denied*, 396 U.S. 970, 90 S.Ct. 454, 24 L.Ed.2d 436; *Embree v. United States*, 320 F.2d 666, 668 (9th Cir. 1963). As the Seventh Circuit observed:

". . . the importance of the immediacy factor would be greatly diminished,

---

**3.** The jury was instructed on the evidence of "flight" as follows:

"Now, ladies and gentlemen, there has been introduced in this case evidence that this defendant failed to appear on February 19, 1977, the date previously set for his trial in this case. Whether or not this constituted flight after he was accused of a crime that had been committed is for you to determine.

"Flight alone is not, of course, sufficient in itself to establish guilt, but may be a factor that may be considered by the jury in light of all other evidence in the case in determining guilt or innocence. Whether or not this flight, if you find it in fact to be flight, shows a consciousness of guilt or the significance to be attached, if any, to such evidence as failure to appear for trial are matters exclusively within the province of you, the jury.

"In your determination of this evidence, you can consider that there may be many

reasons for this defendant's failure to appear for his trial in this matter as originally scheduled, totally consistent with innocence. You should consider and weigh this evidence in connection with all other evidence in the case and give it such weight, if any, as in your judgment it is fairly entitled to receive." Reporter's Transcript (R.T.) 157–158.

**4.** The cases relied upon by Miranda are distinguishable on this basis. In *United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977), the defendant had not been charged with any crime, nor was there any showing that the defendant knew he was wanted for any crime, at the time he allegedly fled. In *United States v. White*, 488 F.2d 660 (8th Cir. 1973), the defendant did not have knowledge of the charges against him at the time he took flight, over five months after the crime occurred.

if not rendered irrelevant, when there is evidence that the defendant knows that he is accused of and sought for the commission of the crime charged."

*Jackson, supra,* 572 F.2d at 641. In the present case, Miranda obviously knew about the charges against him. He had already been arrested, arraigned, pled not guilty, and then fled a few days prior to his scheduled jury trial. Conversely, even if we held that the immediacy requirement must be satisfied before giving the flight instruction in every case, we would find that it was satisfied here where the flight occurred *immediately* prior to the defendant's scheduled jury trial. Flight immediately after the commission of a crime, or immediately prior to trial, both support an inference of consciousness of guilt.

■ We also agree with Miranda that other reasons might support his decision to take flight, but this in itself does not make the flight instruction improper. After all, as part of the court's flight instruction, the jury was told that there may have been many reasons totally consistent with innocence showing why Miranda did not appear at his first scheduled trial. *See* n.3, *supra* (complete text of court's instructions on flight); 1 E. Devitt and C. Blackmar, *Federal Jury Practice and Instructions,* 3rd ed. (West 1977), § 15.08.

■ Miranda's claim that the flight instruction should have included the reasonable doubt instruction is raised for the first time on appeal, thus limiting our review to the plain error standard of Fed.R.Crim.P. 52(b). We are aware of no authority which has held that flight must be proven beyond a reasonable doubt before the jury can consider it.[5] Flight was not an element of any of the crimes which Miranda was charged with committing, it was merely circumstantial evidence which the jury could properly consider on the facts of this case.[6]

## AMOUNT OF BOND FORFEITURE

■ Miranda contends that it was error to admit, over objection, evidence of the amount and nature of the bond which he forfeited by his failure to appear. The Government does not fully address this issue in its brief except to make conclusory assertions that this was "strong evidence" and "highly probative" of consciousness of guilt in connection with his flight. We are unable to establish any chain of logic in support of the Government's argument. Although we believe that the evidence concerning the amount of the forfeited bond should not have been admitted, we hold that its admission was not reversible error. The evidence added nothing significant to facts that were before the jury showing Miranda's flight to avoid trial.

## PRIOR OFFENSE

Three years prior to the incident involved in the present case, Miranda had been arrested and convicted for smuggling marijuana into the United States from Mexico. He had been one of six people backpacking approximately 80 kilograms of marijuana. Defense counsel tried to obtain a pretrial ruling excluding the evidence on the ground that its sole relevance was to prove a disposition to smuggle, a purpose flatly forbidden by the Evidence Code. When the Government offered the evidence as part of its case-in-chief, the district court overruled the objection on the ground that the evidence was relevant to prove Miranda's intent or knowledge, and thus fell within the exception of Fed.R.Evid. 404(b).

Rule 404(b) first restates the long-settled rule that evidence of prior or subsequent bad acts or crimes cannot be admitted when the sole relevancy is to show disposition to

---

**5.** We are aware of two cases where the flight instruction included the proof beyond a reasonable doubt standard. *Burroughs v. United States,* 365 F.2d 431, 432–433 (10th Cir. 1966); *Golliher v. United States,* 362 F.2d 594, 604 (8th Cir. 1966) (cited by Miranda). Neither case held that such language was required.

**6.** If it had been an element of any of the offenses, then "the Due Process Clause [would have protected] the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).

commit crimes or to commit the particular kind of crime with which the defendant is charged. ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. . . ." Fed.R.Evid. 404(b). *Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Webb*, 466 F.2d 1352 (9th Cir. 1972); *United States v. Hearst*, 563 F.2d 1331 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90. *See* cases collected and analyzed in 2 Weinstein's Federal Evidence ¶ 404[04] (1976).) The second sentence of Rule 404(b) recognizes that evidence of other crimes "may, however, be admissible for other purposes, such as proof of . . . intent, . . . knowledge . . . ." (Fed.R.Evid. 404(b).)

When the Government offers evidence of prior or subsequent crimes or bad acts as part of its case-in-chief, it has the burden of first establishing relevance of the evidence to prove a fact within one of the exceptions to the general exclusionary rule of Rule 404(b) and thereafter of showing that the proper relevant evidence is more probative than it is prejudicial to the defendant. In this case, the Government failed to make the initial showing, and, therefore, the district court did not have occasion to balance the probative value against the prejudicial effect. The only contested issue in this case is whether Miranda knew that the concealed heroin was in the vehicle that he was driving. The sole similarity between the prior offense and the offense for which Miranda was on trial is smuggling contraband across the border. The Government persuaded the district court that the common thread of smuggling was enough to bring the prior offense within the exception of Rule 404(b). The theory was that a person who has shown an inclination to

smuggle contraband across the border on one occasion may be inclined to do so on another. However, that is precisely the use of a prior bad act that is forbidden. ("The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson v. United States, supra*, 335 U.S. at 475–76, 69 S.Ct. at 219. *See also United States v. Marques*, 600 F.2d 742 (9th Cir. 1979).

To carry its burden of showing relevance within the exception to the general rule of inadmissibility, the Government was required to establish a logical basis from which to infer knowledge of the presence of heroin in the vehicle from evidence that Miranda had smuggled marijuana in a backpack on a prior occasion.[7] That logical thread is missing unless common human experience demonstrates that it is more probable than not that a person who has knowingly smuggled marijuana on his person will know of the presence of contraband concealed in a vehicle. The inference is not permissible because experience does not permit that connection between the two events to be made.[8]

█ When a prior criminal act is relied upon to prove intent or knowledge, similarity between the two events must be shown to establish the threshold requirement of relevance. We can reasonably infer, for example, that a person who has knowingly carried marijuana in a backpack across the border on one occasion will know that he is carrying marijuana in his backpack when he is caught carrying marijuana in the same way as he crosses the border on a later

---

7. *See United States v. Benedetto*, 571 F.2d 1246, 1248 (2d Cir. 1978) ("The Government must do more than demonstrate that the evidence is not offered solely to show that the defendant is a bad person. Stopping the analysis there would ignore the fundamental precept that any evidence must be relevant to some

issue in the trial. There is no presumption that evidence of other crimes is relevant to any issue in a criminal trial, although it often will be.").

8. *See* Weinstein's Federal Evidence, *supra*, ¶ 404[08], at 404–42 to –43.

occasion. The greater is the dissimilarity of the two offenses, the more tenuous is the relevance. (*e.g., United States v. Birns*, 395 F.2d 943 (6th Cir. 1968); *United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978); *United States v. DeVaughn*, 601 F.2d 42 (2d Cir. 1979).)[9]

█ The Government only made a brief reference to the prior offense during closing argument.[10] R.T. 122. More importantly, the prior offense was only one of several pieces of evidence which the Government relied upon to prove knowledge and intent. Miranda was in possession of the car and inferentially everything that was in it. No evidence was offered which showed the remotest possibility that someone else may have hidden the heroin in the car. Miranda was nervous when he was stopped at the port of entry. The Government also argued that the fact that his son was with him may have created an inference that Miranda intended to distract the inspectors. The previously discussed flight or failure to appear also created an inference of consciousness of guilt. Additionally the large amount of money that the heroin was worth negated the possibility that it had been placed in the car by mistake or accident. Although the admission of the evidence was error, we do not believe the admission was prejudicial. All of this evidence, and the inferences which the Government sought to draw from it, created a strong, if not overwhelming, case against Miranda.

## CONSECUTIVE SENTENCES

Miranda claims that the three-year sentence for making a false claim of United States citizenship which was ordered to run *consecutively* to the fifteen-year sentence on the two heroin counts was improper. He argues that for sentences to properly run consecutive to one another, the actions and intent of the person convicted must be shown to result from distinct, successive criminal episodes rather than from a single transaction. In support of this contention, defendant cites the following cases: *United States v. Stevens*, 521 F.2d 334 (6th Cir. 1975); *United States v. Clements*, 471 F.2d 1253 (9th Cir. 1972); *Fuller v. United States*, 132 U.S.App.D.C. 264, 407 F.2d 1199 (1968 (en banc)), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125; *United States v. Ortiz-Martinez*, 557 F.2d 214 (9th Cir. 1977); *United States v. Oropeza*, 564 F.2d 316 (9th Cir. 1977), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788; *United States v. Taxe*, 572 F.2d 216 (9th Cir. 1978), *cert. denied*, 436 U.S. 918, 98 S.Ct. 2265, 56 L.Ed.2d 759.

The government correctly points out that none of these cases directly support Miranda's contention. Those cases which have found consecutive sentencing to have been improper dealt with situations where the charges involved separate offenses encompassing successive steps or grades which normally flow into the same criminal act. *Stevens, supra,* involved charges of possession with the intent to distribute and distri-

9. The Government's reliance upon *United States v. Batts*, 573 F.2d 599 (9th Cir. 1978), *cert. denied*, 439 U.S. 859, 99 S.Ct. 178, 58 L.Ed.2d 168, is misplaced because no relevance problem existed. In *Batts*, the defendant, who was charged with possessing hashish with intent to distribute, testified on cross-examination by the Government that he had no knowledge of the use of cocaine. In rebuttal, the Government was permitted to impeach him by proving that the defendant had offered to sell a large amount of cocaine to an undercover agent a few months before the hashish transaction. *Batts*, like *United States v. Benedetto, supra*, involves only impeachment. When a prior criminal conviction, rather than a bad act, is used to impeach, admissibility is governed by Fed.R.Evid. 609.

10. The extent to which the Government relies upon the inadmissible prior offense evidence is a factor which can be considered in deciding whether reversible error resulted. *Cf. United States v. Weaver*, 565 F.2d 129, 135 (8th Cir. 1977), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780 (court found that any error created by introduction of prior offense was harmless since it was only mentioned in one *brief* answer); *United States v. Oliphant*, 525 F.2d 505, 507 (9th Cir. 1975), *cert. denied*, 424 U.S. 972, 96 S.Ct. 1473, 47 L.Ed.2d 740 (fact that only *brief* reference was made to prior convictions considered by this court in refusing to find error).

bution of heroin. 521 F.2d at 336–337. *Clements, supra,* involved charges of unlawfully making a firearm, possessing a firearm upon which the making tax had not been paid, and possession of an unregistered firearm. 471 F.2d at 1254–1258. *Fuller, supra,* said that a defendant could not be given consecutive sentences for first-degree murder and another homicide crime after committing a single homicide. 407 F.2d at 1224. *Ortiz-Martinez, supra,* involved charges of illegal entry of an alien and re-entry by a deported alien. 557 F.2d at 216–217. *Oropeza, supra,* involved charges of possession with intent to distribute and distribution of heroin. 564 F.2d at 323–324. And *Taxe, supra,* does not support Miranda's position. 572 F.2d at 217. In *Oropeza, supra,* the court said that where the offenses are found in the same statutory section and where there is no evidence of Congressional intent to impose multiple punishment for a single criminal act, then consecutive sentences are improper. 564 F.2d at 323–324.

██ The immigration and heroin charges are not successive steps which normally follow in the same criminal act, nor are they different degrees or steps in the same criminal offense. The immigration offense is contained in a different statutory section than the heroin offenses, and each is designed to punish two separate types of criminal activity. The consecutive prison sentences were proper.

The judgment of conviction and sentence is AFFIRMED.