943 F.2d 56
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mesfin SEYOUM, Defendant-Appellant.
 No. 88-5270.
 United States Court of Appeals, Ninth Circuit.
 Argued Oct. 1, 1990.
Submitted Nov. 1, 1990.
Decided Sept. 9, 1991.
 
 1
 Before WALLACE, Chief Judge, POOLE, Circuit Judge, and THOMPSON, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Mesfin Seyoum, a physician, appeals his conviction by jury trial for sixty counts of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1). Seyoum contends that (1) there was insufficient evidence to support the jury's verdict on each count; (2) the district court erred by admitting evidence of his flight to England and (3) the district court erred by instructing the jury on flight and consciousness of guilt. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.
 
 BACKGROUND
 
 4
 On October 29, 1986, Mesfin Seyoum was indicted by a federal grand jury on eighty-four counts of unlawfully distributing drugs by writing prescriptions outside the usual course of medical practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1). On November 23, 1987, Seyoum was arraigned on a first superseding indictment charging him with sixty counts of unlawful distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1).
 
 
 5
 A jury trial commenced on November 24, 1987. On December 4, 1987, the jury delivered a verdict of guilty as to all sixty counts of the superseding indictment. On July 18, 1988, the district court sentenced Seyoum to serve concurrent terms of imprisonment of five years on counts 59 and 60 with a special parole term of three years on count 59. Imposition of sentence on counts 1-58 was suspended and Seyoum was placed on five years probation to commence upon release from confinement. Seyoum timely appeals.
 
 ANALYSIS
 
 6
 * Sufficiency of Evidence
 
 
 7
 Seyoum contends that there was insufficient evidence to sustain his conviction for all sixty counts of distributing a controlled substance. Specifically, Seyoum asserts that the prescriptions written to Carolyn Justice (alleged in Counts 1, 4, 13-15, 18-20, 28-30, 35-36, 46-47 and 54), Wanetta Jones (alleged in Counts 2-3, 5-8, 11-12, 16-17, 21-22, 27, 31-34, 43-45 and 52-53), Charles Hayward (alleged in Counts 9, 25-26, 37-39 and 48-50), Rosemary Hayward (alleged in Counts 10, 23-24, 40-42 and 51) and Lincoln Fisher (alleged in Counts 55-60) were all within the usual course of professional practice and for a legitimate medical purpose. These contentions lack merit.[1]
 
 
 8
 21 U.S.C. § 841(a)(1) provides that "except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally (1) to ... distribute ... a controlled substance." 21 U.S.C. § 841(a)(1). Physicians are liable under this section "when their activities fall outside the usual course of professional practice." United States v. Moore, 423 U.S. 122, 124 (1975). See also United States v. Kaplan, 895 F.2d 618, 620 (9th Cir.1990) (fact that physician failed to provide physical examinations and expert testimony that physician's actions were outside course of professional practice provided sufficient evidence that physician knowingly distributed controlled substances); United States v. Boettjer, 569 F.2d 1078, 1080 (9th Cir.1978) (Schedule II prescriptions not issued for a legitimate medical purpose by a physician acting within the scope of his practice, if knowingly or intentionally issued, may form the basis for criminal liability pursuant to 21 U.S.C. § 841), cert. denied, 435 U.S. 976 (1978).
 
 
 9
 The government's case consisted primarily of the testimony of four patients who purchased prescriptions from Seyoum.[2] The record is replete with evidence establishing that Seyoum prescribed drugs to the five above-mentioned patients in such a fashion that was outside the course of usual professional practice.
 
 
 10
 For instance, when Carolyn Justice went to Seyoum's office with Wanetta Jones they would often leave with the ingredients for "loads," or prescription heroin (APC # 4 and Doriden) or other matching prescriptions. Over a two-year period of purchasing prescriptions Jones was only examined by Seyoum once and Justice saw Seyoum in person only four or five times. On at least two occasions, Jones received triplicate prescriptions for Dilaudid, a closely regulated narcotic in the morphine-heroin family. A medical expert testified that nothing in Jones' chart justified the use of that drug. Furthermore, Seyoum gave Jones prescriptions for one hundred eighty (180) pills (uppers and downers) and sixteen (16) ounces of a codeine-like substance during a 48-hour period.
 
 
 11
 Seyoum also gave Charles and Rosemary Hayward combinations of Ritalin and APC # 4 and Citra Forte for over a two year period. During that time, Mr. Hayward was only examined once and Mrs. Hayward was never examined by Seyoum. The Hayward couple often left Seyoum's office with matching prescriptions.
 
 
 12
 At argument we allowed the parties to submit supplemental filings setting forth the evidence concerning the prescriptions written to Lincoln Fisher and alleged in counts 55-60 of the indictment. The evidence established that Fisher received prescriptions for three sets of "stews" (combinations of Ritalin and APC # 4) between July 23, 1984 and November 5, 1984 and that this combination was well known in the medical community to be abused on the streets and could cause strokes and internal bleeding. It was also established that this drug combination was inappropriate to treat Fisher's pain, depression and sleeping disorders.
 
 
 13
 The evidence was such that a reasonable jury could conclude that these five patients were prescribed subscriptions of Schedule II or III drugs without any legitimate reason and received inadequate or no medical examinations before acquiring these prescriptions. Accordingly, the jury's verdict with respect to all sixty counts did not constitute plain error. See United States v. Hernandez, 876 F.2d at 777.
 
 II
 Consciousness of Guilt
 
 14
 Seyoum contends the district court erred by allowing him to be cross-examined about his flight to London nine days after he was indicted and that the evidence of his alleged flight should be excluded as being unfairly prejudicial because it was insufficient to demonstrate that he was not simply on vacation. These contentions lack merit.
 
 
 15
 Flight immediately after the commission of a crime, or immediately prior to trial, is admissible to support an inference of guilt. United States v. Hernandez-Miranda, 601 F.2d 1104, 1107 (9th Cir.1979). Of critical importance is whether the defendant knew of the accusations against him at the time of flight. Id. at 1107.
 
 
 16
 Ten days after Seyoum was indicted by the federal grand jury, he moved to London, England and remained there until he was arrested at the airport in Washington, D.C. on July 17, 1987. While living in London, he was appointed the Senior House Officer in Orthopedics at a hospital, using "Seyoum Mesfin," the reverse of his true name and provided himself with a reference, using his alias, "Paul Satreides." At trial, Seyoum filed a motion objecting to the government's proposed cross-examination of him regarding his 1986 departure from Los Angeles, his residence and employment in England, the introduction of a set of identification papers under the name of Paul Michael Satreides and a proposed flight jury instruction. The district court denied the motion. Seyoum claimed that admission of flight evidence was unduly prejudicial.
 
 
 17
 The court's ruling was proper on several grounds. First, it appears that Seyoum knew of the accusations against him at the time of his flight. The government scheduled a pre-indictment meeting with Seyoum's attorney during the latter part of 1985. On December 16, 1985, Seyoum's attorney asked to delay the pre-indictment meeting until early 1986. Moreover, Seyoum testified that his attorney did inform him of the criminal investigation. Before his flight to London, he had obtained a false driver's license in the name of Paul Satreides. Accordingly, it appears that Seyoum knew about the criminal investigation and prepared spurious identification when he fled to England, thus rendering his flight evidence admissible. See Hernandez-Miranda, supra, 601 F.2d at 1107.
 
 
 18
 Second, the flight evidence was proper because there was sufficient evidence to demonstrate that Seyoum was not simply on vacation. The government demonstrated that Seyoum abandoned his home in Los Angeles and worked in England as a doctor under an assumed name and had in his possession a false identification document. It has been held by other circuits that flight and efforts at concealment or falsification of identity may be admitted at trial as bearing upon the guilt of the accused, provided there is adequate factual support. See United States v. Grandmont, 680 F.2d 867, 869 (1st Cir.1982) (district court did not err by admitting evidence and by instructing jury that flight or concealment after accusation of a crime may be considered in determining guilt or innocence where defendant's flight occurred after he was served a grand jury subpoena and he was told that he was a suspect in a bank robbery); United States v. Khamis, 674 F.2d 390, 395 (5th Cir.1982) (testimony that defendant, a Jordanian national, was carrying an alien registration card bearing correct face but false name was properly admitted as evidence of consciousness of guilt); United States v. Boyle, 675 F.2d 430, 432 (1st Cir.1982) (evidence that a defendant checked into hotel using aliases and false identification cards six days after robbery was properly admitted to show consciousness of guilt). Accordingly, the district court did not abuse its discretion by admitting evidence of Seyoum's flight to show his consciousness of guilt.
 
 III
 Jury Instruction
 
 19
 Seyoum contends that the district court abused its discretion by giving a jury instruction on flight and consciousness of guilt because the evidence did not support that instruction. As discussed in the preceding section, there was more than sufficient evidence underlying the instruction. See Hernandez-Miranda, 601 F.2d at 1107. Moreover, the issue appears to be waived by the fact that the defendant stipulated to the flight instruction given by the court. We hold that the district court did not abuse its discretion by giving the flight instruction. See id.; United States v. Grandmont, 680 F.2d at 869.[3]
 
 
 20
 AFFIRMED.
 
 
 
 *
 The Honorable Gordon Thompson, Chief Judge, United States District Court for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The record reveals that a motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29 was brought before the district court on November 30, 1987 and was denied without prejudice on that same date. However, no Rule 29 motion was brought after the close of all of the evidence. The government contends that Seyoum should be foreclosed from challenging the sufficiency of the evidence because he failed to renew his motion for judgment of acquittal at the close of all the evidence. This contention lacks merit. When the defendant has failed to move for a judgment of acquittal both at the close of the government's case and at the close of all the evidence, we review the sufficiency of the evidence for plain error. See United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.1989); United States v. Mora, 876 F.2d 76, 77 (9th Cir.1989). "A plain error is a highly prejudicial error affecting substantial rights." United States v. Hernandez, 876 F.2d at 777. Accordingly, we will review Seyoum's sufficiency of evidence claims under the "plain error" standard
 
 
 [2]
 The government's case also consisted of the testimony of David Hall, a licensed pharmacist who worked undercover for the Drug Enforcement Administration (DEA) and who filled Seyoum's prescriptions, patient charts and the testimony of two medical experts. Moreover, the government established that Seyoum's office was set up with that of a "rock house," a location where "rock cocaine" is sold. Seyoum's office "patients" were given pat-down searches and received prescriptions from an unknown person on the other side of a one-way mirror and signed a form swearing that they were not government agents
 
 
 [3]
 The district court's stipulated flight instruction is quoted in Devitt and Blackmar, Federal Jury Practice and Instructions, § 15.08 (1977). This particular instruction has been approved by this court. See United States v. Grieser, 502 F.2d 1295, 1299-1300 (9th Cir.1974)