**UNITED STATES of America**

v.

**Randall B. HUSAR, Appellant.**

**Nos. 87–3076, 88–3020.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 30, 1988.

Decided Nov. 1, 1988.

Thomas Lumbard, Washington, D.C., (appointed by this court), for appellant.

Saul M. Pilchen, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Mary Ellen Abrecht and Thom-

as E. Zeno, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before: RUTH BADER GINSBURG and SILBERMAN, Circuit Judges, and POLLACK,* Senior District Judge.

Opinion PER CURIAM.

PER CURIAM:

Randall B. Husar appeals from the district court's final judgment and order committing him to the custody of the Attorney General after an acquittal by reason of insanity, and its subsequent order denying his Motion for Release from Federal Custody. For the reasons stated hereafter, we affirm the district court's dispositions.

## BACKGROUND

An indictment filed November 6, 1986 charged Husar, under 18 U.S.C. § 1361, with destruction of government property in excess of $100. The offense occurred on October 10, 1986 in the National Archives when Husar smashed with a hammer a glass case that housed the original Constitution and Bill of Rights.

Initially found incompetent to stand trial, Husar was arraigned on the indictment on March 5, 1987 after he regained competency. On June 3, 1987, he was found not guilty only by reason of insanity.

Pursuant to 18 U.S.C. § 4243(a), Husar was immediately committed to St. Elizabeths Hospital for an evaluation of his current mental state. At a hearing held August 24, 1987, the district court received testimony from a hospital psychiatrist and a psychologist. Each concluded that Husar's mental condition made him a danger to society if released.

Finding that Husar's offense had caused "serious damage to property," the district court held that Husar had failed to prove by clear and convincing evidence that his release would not create a substantial danger to the property and person of others

---

* Of the U.S. District Court for the Southern District of New York, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

due to his mental state. *See* 18 U.S.C. § 4243(d).

Husar was then committed to the custody of the Attorney General. Under 18 U.S.C. § 4247(i)(A), the Attorney General is charged with the responsibility to "contract ... for the confinement, hospitalization, care, or treatment of ... a person committed to his custody" pursuant to § 4243(e). Section 4243(e) in turn provides:

> The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment.

18 U.S.C. § 4243(e) (Supp. III 1985).

Accordingly, on December 9, 1987 the Attorney General, through the Federal Bureau of Prisons, wrote to Colorado mental health officials advising them that he was prepared to place Husar for care and treatment with the State on the following terms:

> Under 18 U.S.C. § 4243(e), the Attorney General is to release Mr. Husar to the custody of the State of Colorado, if the state will assume responsibility for his custody, care and treatment. In addition, 18 U.S.C. § 4243(f) provides that before the person is released or conditionally released from your custody, a certificate is to be filed with the committing court (here, the U.S. District Court for the District of Columbia) to the effect that the person no longer presents a substantial risk of injury to another, or serious risk to property. The possibility exists that a hearing may then be scheduled concerning the release. However, that possibility may be minimized by pro-

viding a *factual basis for the release* in the certificate. Finally, the statute also provides (18 U.S.C. § 4247(e)(1)(8)) [sic] that *annual reports* concerning the mental condition of the person and containing recommendations concerning the need for his continued hospitalization be *filed with the committing court....*

I understand these conditions governing Mr. Husar's commitment and release are acceptable to you.

Letter from Clair Cripe, General Counsel, Bureau of Prisons to Jack Bartteson, Deputy Director, Division of Mental Health (Dec. 9, 1987) [hereinafter Federal letter of transfer] (emphasis supplied).

The Colorado officials accepted these terms when they received Husar into their care for treatment. The terms, we note, comport with the statute.[1]

In the interim, Husar had filed a Motion for Release from Federal Custody in November 1987. The government's response informed the district court of the final arrangements then underway to release Husar to Colorado, and argued that as a result, Husar's motion was moot.

Citing the letter from the Bureau of Prisons to the Colorado officials, Husar objected to the Attorney General's imposition of any federal conditions upon his stay in Colorado. Specifically, he objected to the continuing reporting requirements imposed upon the state, as well as the Attorney General's reservation of the federal government's right to conduct a hearing in federal district court pursuant to federal standards for discharge as prescribed in 18 U.S.C. § 4243(f).[2]

---

1. Section 4247 provides in relevant part:
 (e) Periodic report and information requirements.—(1) The director of the facility in which a person is hospitalized pursuant to ... section 4243 ... shall prepare annual reports concerning the mental condition of the person and containing recommendations concerning the need for his continued hospitalization. The reports shall be submitted to the court that ordered the person's commitment to the facility and copies of the reports shall be submitted to such other persons as the court may direct.
 18 U.S.C. § 4247(e) (Supp. III 1985).

2. Section 4243(f) provides in relevant part:

(f) Discharge.—When the director of the facility in which an acquitted person is hospitalized pursuant to subsection (e) determines that the person has recovered from his mental disease or defect to such an extent that his release ... would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment.... The court shall order the discharge of the acquitted person or ... shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine whether he should be released. If, after the

Husar further argued that such proposed retention of federal control prevented his motion from becoming moot, since the federal reporting and discharge standards were more stringent than those applicable under Colorado's civil commitment statutes.[3] He also averred that he "is not asserting that he has recovered and should therefore be discharged from [the] hospital."[4]

In an Order filed January 29, 1988, the district court observed that Husar had in fact been surrendered by the Attorney General and sent to Colorado, as previously indicated. The court therefore dismissed Husar's Motion for Release from Federal Custody as moot.

On appeal Husar urges:

(1) He is entitled to complete release from federal custody; and

(2) His offense did not involve "serious damage to property"; consequently, he is not required to prove his mental health by clear and convincing evidence rather than by a preponderance of the evidence.

## DISCUSSION

 Under 18 U.S.C. §§ 4243, 4247, the Attorney General clearly had the authority to stipulate the terms and conditions under which Husar would be placed in Colorado state custody for care and treatment— terms that the state officials agreed to assume.

The statutory language, sensibly read, mandates continued federal control over federal insanity acquittees even after the acquittee is placed by the Attorney General

in state custody. State officials to whom a patient has been "released" for custody, care and treatment, the statute directs, are obliged to provide "annual reports concerning the mental condition of the [acquittee] and containing recommendations concerning the need for his or her continued hospitalization." 18 U.S.C. § 4247(e). These reports must be filed with the federal district court that ordered the commitment. *Id.* The statute also directs that the director of the state facility file a certificate with the district court when he or she believes that the acquittee no longer creates a substantial risk of bodily injury to another person or serious damage to the property of another, and thus may be a subject for discharge. *Id.* § 4243(f). The district court then determines whether the certificate establishes sufficient factual grounds for discharge, as measured by the same federal standards used upon the acquittee's initial commitment, and holds a hearing thereon if necessary. *Id.* § 4243(d), (f).

Congress, we think it plain, did not intend that the relocation of an acquittee would give him a state pass to freedom on terms any less stringent than those imposed by federal law. The scheme and sense of the statute are unmistakable: a federal acquittee is committed to federal custody; federal officials then place the acquittee with state officials on terms prescribed by the Attorney General in accordance with federal law; and if the state officials recommend the acquittee's discharge, a federal court applying federal standards finally determines whether the acquittee may in fact be discharged.[5]

---

hearing, the court finds by the standard specified in subsection (d) that the person has recovered from his mental disease or defect ... the court shall order that he be immediately discharged; or ... that he be conditionally discharged.
18 U.S.C. § 4243(f) (Supp. III 1985).

3. The federal standards are comparable, however, to those effective in Colorado for persons acquitted in Colorado courts only by reason of insanity. *See* Colo.Rev.Stat. § 16-8-115 (1986).

4. The government asserted in its brief and at argument that Husar's appeal is not ripe because he is not currently seeking discharge.

However, since Husar objects to the present conditions imposed upon his confinement in Colorado by the Federal letter of transfer, this court may properly determine the validity of these conditions at this time.

5. The legislative history fully supports the conclusion that Congress intended to prescribe continuing federal control over federal acquittees. As Senator Thurmond, Chairman of the Committee on the Judiciary and co-sponsor of the bill, explained on the floor of the Senate:

These procedures [established by 18 U.S.C. §§ 4241–4247] provide uniform, clear, consistent treatment of an individual at every stage of the criminal justice process from the

The letter sent to Colorado officials upon Husar's transfer merely carried out the design of 18 U.S.C. §§ 4243(d), (e), (f), 4247(e)(1)(B).

■ Finally, the district court committed no clear error in finding that the smashing of the glass case sufficiently indicated Husar's potential dangerousness to place him within the confines of 18 U.S.C. § 4243(d).

### CONCLUSION

Accordingly, the two district court orders Husar tenders for our review are hereby AFFIRMED.

---

pretrial stage through conviction and release. The foundation for these procedures lies in the notion that the [district] court should retain jurisdiction over Federal offenders suffering from mental diseases and that disposition of such offenders ... should be ordered by the court following a hearing. As a result, the public is protected from insane and dangerous persons, and those criminal offenders in need of mental health care will receive proper and humane treatment.
128 Cong.Rec. 23,352 (daily ed. Sept. 14, 1982).