**UNITED STATES of America**

v.

**Randall B. HUSAR, Appellant.**

**Nos. 87–3076, 88–3020.**

United States Court of Appeals, District of Columbia Circuit.

Feb. 14, 1989.

Thomas Lumbard, Washington, D.C. (appointed by this court), for appellant.

ON APPELLANT'S SUGGESTION FOR
REHEARING EN BANC ·

Before WALD, Chief Judge;
ROBINSON, MIKVA, EDWARDS,
RUTH BADER GINSBURG, STARR,
SILBERMAN, BUCKLEY, WILLIAMS,
D.H. GINSBURG and SENTELLE,
Circuit Judges.

ORDER

Appellant's Suggestion for Rehearing *En Banc* has been circulated to the full court. The taking of a vote thereon was requested. Thereafter, a majority of the judges of the court in regular active service did not vote in favor of the suggestion. Upon consideration of the foregoing it is

ORDERED, by the court *en banc*, that appellant's suggestion be denied.

A concurring statement by Circuit Judge RUTH BADER GINSBURG, joined by Circuit Judges SILBERMAN and SENTELLE, is attached.

A dissenting statement by Chief Judge WALD, joined by Circuit Judge MIKVA, is attached.

A dissenting statement by Circuit Judge D.H. GINSBURG is also attached.

Statement by Circuit Judge RUTH BADER GINSBURG, concurring in the denial of rehearing en banc, in which Circuit Judges SILBERMAN and SENTELLE join:

Husar was charged, tried, and found not guilty by reason of insanity in a federal court. Under the federal regime, he would remain in custody, for care and treatment, unless he carried the burden of demonstrating that "his release would not create a substantial risk of bodily injury to another person or serious damage [to] property

of another due to a present mental disease or defect." 18 U.S.C. § 4243(d), (f) (Supp. IV 1986). Had Husar been charged, tried, and found not guilty by reason of insanity in a Colorado state court, he would also remain in custody unless he could carry the burden of proving he no longer had an impaired mental condition. *See* Colo.Rev. Stat. § 16–8–115(2) (1986); *see also id.* § 16–8–116 (conditioning release of person found not guilty by reason of insanity upon report to trial court and prosecuting attorney, and a discharge hearing).[1] Under the Attorney General's stipulation with Colorado officials, Husar thus will be treated in a manner both systems deem proper for persons in his situation, *i.e.*, persons found not guilty by reason of insanity.

By contrast, under Husar's analysis, his status, by reason of the federal-state transfer, becomes solely that of a person civilly committed by state authorities. As such, he may demand a jury trial on the question of his continued commitment, Colo.Rev. Stat. § 27–10–109(3), (4) & (5), at which Colorado officials would have the burden of demonstrating, by clear and convincing evidence, the need for continued hospital treatment. *Id.* § 27–10–111(1). (Colorado's release-qualification regime for insanity acquittees, *see supra*, text at note 1, does not fit federally-tried Husar; the state's regime is explicitly tied to prosecutions in state courts by state prosecutors.)

Were Husar's view to prevail, under which federal and Colorado officials could not cooperate as they have to their mutual satisfaction in this case, the Attorney General would hardly be assisted in his endeavors "to get the state to take over the acquittee's care completely." *See* dissent by Chief Judge Wald at 1535. As to "fundamental principles of state autonomy," and dramatic preemption of state authority, *see id.* at 1535, 1536 we note that only Husar, not any Colorado officer, com-

---

1. Although the post-prosecution federal and state schemes are similar in that both place the burden on defendant to demonstrate his suitability for release, the regimes are not identical. Under federal law, for example, the burden on a

person found not guilty by reason of insanity calls for proof of qualification for release by "clear and convincing evidence," 18 U.S.C. § 4243(d); under Colorado law, "a preponder-

plains.[2]

The Federal Bureau of Prisons' letter of transfer, in sum, set terms the Colorado officials accepted. Those terms were designed to assure that Husar's status would remain that of a person who had engaged in felonious conduct, one who would therefore have the burden of establishing his qualification for release. We do not believe the "federalism" banner Husar waves warrants unsettling the sensible, lawful arrangement the Attorney General made with the concerned Colorado authorities.

WALD, Chief Judge, with whom MIKVA, Circuit Judge, concurs, dissenting from denial of rehearing en banc:

I would grant rehearing en banc because this is the first interpretation of a statute of national import and, as such, I fear it distorts federal-state relationships in the treatment of those acquitted of federal crimes by reason of insanity who are subsequently turned over to state authorities for civil commitment. The panel's interpretation of the relevant provisions dealing with the release of such offenders to state custody runs counter to the structural integrity of the statute, its history, and fundamental principles of state autonomy.

Section 4243(e) of Title 18 provides for civil commitment after hearing to the Attorney General of persons found guilty of a federal crime by reason only of insanity, who cannot show by clear and convincing evidence that they are no longer dangerous. The same section, however, says that the Attorney General shall "release" any such person to the appropriate state official if the state will assume responsibility for his care, custody and treatment. Only if the appropriate state will not take custody is the Attorney General directed to "hospitalize the person for treatment in a suitable facility," and then only until a state will assume responsibility for his care or until he can prove his nondangerousness. A

subsequent section 4243(f) provides for discharge only by federal court order when "the director of the facility in which an acquitted person is hospitalized pursuant to subsection (e)" files the appropriate certificate with the court of commitment.

The structure and the history of the Act make clear that "release" to a state terminates the civil commitment to the Attorney General. See S.Rep. No. 225, 98th Cong., 1st Sess. 243 (1983), U.S.Code Cong. & Admin.News 1984, p. 3182. The Attorney General hands the acquittee over to the state authorities who then commence the state's own civil commitment proceedings, as was done in this case. The federal district court of commitment referred to in section 4243(f) whose approval must be obtained for discharge can only supervise those acquittees who are still in the Attorney General's care; section 4243(f) cannot logically apply to those persons who have been turned over to the state and then civilly committed by state authorities. The legislative history, moreover, emphasizes that the Attorney General must try whenever possible to get the state to take over the acquittee's care completely, and only if a state will not do so is he authorized to continue his own commitment, including contracting with the state for the care of the patent. Only when the Attorney General is still the commitment official would section 4243(f)'s discharge provisions apply. It was, however, quite clear that complete release to state officials and state commitment was the preferable route, as far as Congress was concerned. See The Insanity Defense: Hearings Before the Senate Committee on the Judiciary, 97th Cong., 2d Sess. 453 (1982) (Statement of Alexander Harvey II, Chairman, Committee on the Administration of the Criminal Law, Judicial Conference of the United States). This preferred route of "release" to the state means just that; the federal commitment power passes out of the picture. In my view this is the only construction that com-

---

ance of the evidence" suffices. Colo.Rev.Stat. § 16–8–115(2).

2. If Colorado, or any other state, is unwilling to accept the terms of transfer the Attorney General proposes, the state's course, to avoid federal interference, is clear: just say "No."

ports with the language, history, and structural integrity of the statute.

The panel's construction on the other hand raises serious federalism problems, *i.e.*, the exercise of federal court discharge power over mental health patients committed to state "custody" (not federal prisoners boarded in state facilities, but persons acquitted of federal crimes who have been "released" to state mental health authorities). Section 4243(f) envisions extensive federal court powers over the patient's treatment regime as well as his ultimate discharge and even possible reinstatement of the Attorney General's power over a patient who violates discharge conditions. Had Congress meant to preempt state authority so dramatically in the civil commitment field, it would be expected to have made that position far clearer.

Judge Ginsburg contends that, under Husar's analysis, his release from state confinement would be governed by Colo.Rev. Stat. § 27-10-109(3), (4), and (5) rather than by Colo.Rev.Stat. § 16-8-115(2), the state provision dealing with persons acquitted by reason of insanity. *See* Ginsburg op. at 1534. This court need not resolve that issue. I believe that the federal interest in Husar's fate is extinguished upon his release to state officials, and that his subsequent discharge is to be governed by

state rather than by federal law. But the question of *which* state statute should control is one for the Colorado courts, and one on which I express no view.[1]

This statutory scheme for the treatment of federal NGIs will be applied to many federal acquittees in and outside of Washington in years to come.[2] The issues are important enough and the panel's construction problematic enough to warrant en banc treatment.

D.H. GINSBURG, Circuit Judge, dissenting from denial of rehearing en banc:

This case raises important and difficult federalism issues, which in my view warrant rehearing by the court *en banc*. Having studied the panel opinion and the petition for rehearing, but being without the advantage of full scale treatment, I remain unconvinced that Congress intended to intrude the federal government so far into the field of civil commitment historically reserved to the states.

---

**1.** Even if the Colorado NGI statute, Colo.Rev. Stat. § 16-8-115(2), were applicable, the imposition of federal oversight would work a real and substantial interference with the state's ability to apply what it deems to be the appropriate standards for the release of one acquitted by reason of insanity. Under federal law Husar will have "the burden of proving *by clear and convincing evidence* that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another...." 18 U.S.C. § 4243(d) (emphasis supplied). Under Colorado law, a person found not guilty by reason of insanity must demonstrate his recovery *by a preponderance of the evidence.* Colo.Rev.Stat. § 16-8-115(2). Moreover, the Colorado NGI statute provides that the defendant may demand a jury determination of his suitability for release. *Id.*

**2.** The Attorney General made it quite clear that Husar would be released to state supervision only if Colorado officials agreed to the proposed terms of transfer. While the state had the option of refusing those terms, *see* Ginsburg op. at 1535 n. 2, such a refusal would undermine the operation of the statute, which expresses a clear preference for state custody of federal insanity acquittees. The Attorney General is required to "make all reasonable efforts to cause ... a State to assume ... responsibility" for treatment, 18 U.S.C. § 4243(e); we should not adopt a construction of the statute which will encourage the states to decline that responsibility.