28 F.3d 110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Yao Kuang SAETEURN, Defendant-Appellant.
 No. 93-10269.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 17, 1994.
Decided June 13, 1994.
 
 Before: POOLE, CANBY and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Yao Kuang Saeteurn challenges on a variety of grounds his convictions of importation of opium, possession of opium with intent to distribute, and conspiracy to import opium. We affirm.
 
 
 3
 * THE FRANKS HEARING
 
 
 4
 We review de novo the district court's decision not to hold a Franks hearing. United States v. Johns, 851 F.2d 1131, 1133 (9th Cir.1988). However, its findings of fact, including its findings whether the misstatements and omissions in the affidavit were made intentionally or recklessly, will be disturbed only if clearly erroneous. United States v. Mittelman, 999 F.2d 440, 442 (9th Cir.1993).
 
 
 5
 Saeteurn was entitled to a Franks hearing if he established, by a preponderance of the evidence, (a) that Agent Dinkins deliberately or recklessly included false statements or omitted facts from the affidavit, and (b) that those false statements or omissions were material to the magistrate's finding of probable cause. United States v. Motz, 936 F.2d 1021, 1023 (9th Cir.1991). Here, there is no evidence that the factual inaccuracies in the affidavit were caused by anything more serious than inadvertence. Cf. Franks v. Delaware, 438 U.S. 154, 171 (1978) (negligence or innocent mistake are insufficient to warrant hearing). Saeteurn's sole argument is that "the factual errors contained in the affidavit were too significant to have resulted simply from the affiant's negligence." Yet Dinkins explained that the number of shipments and total amount of opium seized were inaccurate because the computer printout from which he obtained the information incorrectly double counted some of the seizures. Similarly, the computer operator had been instructed to prepare a printout showing all seizures of opium mailed to Saeteurn's address between January 1989 and December 1990, and Dinkins testified that he inadvertently copied this time frame onto the affidavit. As to Dinkins's failure to describe the number of shipments seized each year, Saeteurn offers no evidence to suggest that this omission was the result of anything more than Dinkins's belief that this information was irrelevant. The district court could properly find these explanations entirely plausible.
 
 
 6
 Saeteurn insists that he must be allowed an opportunity to cross-examine Dinkins because the issue turns entirely on Dinkins's credibility. He is wrong. See Franks, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.").
 
 
 7
 Because Saeteurn failed to make a substantial preliminary showing that the errors in the affidavit were deliberately or recklessly made, we conclude that the district court properly denied Saeteurn's motion for a Franks hearing.
 
 II
 SEVERANCE
 
 8
 The district court denied Saeteurn's motion to sever count three from counts one and two because it determined that evidence of the mailings would have been admissible in a separate trial of counts one and two to show Saeteurn's knowledge that the elephant statues contained opium, and that Saeteurn therefore could suffer no prejudice from joinder of count three. See United States v. Disla, 805 F.2d 1340, 1353 (9th Cir.1986). We review for abuse of discretion. United States v. Mariscal, 939 F.2d 884, 885 (9th Cir.1991).
 
 
 9
 Saeteurn contends that the district court erred because evidence of the mailings fails three parts of the five part test for admissibility of evidence under Fed.R.Evid. 404(b) used by this circuit. See United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993). First, he says that there is insufficient evidence that he was involved with the mailings.
 
 
 10
 We agree that the fact that all of the mailings were addressed to Saeteurn's apartment, standing alone, provides an insufficient basis for admitting the evidence, because none of the mailings were addressed to him, and other people lived in his apartment. However, the search of Saeteurn's apartment turned up a letter (the "Dear Friend" letter), addressed to him, that provides a sufficient link between Saeteurn and the mailings. In pertinent part, the writer of the letter told Saeteurn:
 
 
 11
 The letter and money you send me I have received it already. I feel very happy. What about the stuff I sent you? Have you receive it yet? Please let me know. You said you are now in trouble and asked me to wait. So, I'll wait until I hear from you with your new address and then send you the stuff as usual.
 
 
 12
 Saeteurn explained that "trouble" referred to the 1990 Gulf War, and "stuff" referred to clothing. However, the district court interpreted "stuff" as the mailings of opium (which stopped after the elephant incident), and "trouble" to be a reference to the government's seizure of the elephants and opium. On this basis, it concluded that there was sufficient evidence to support a finding that Saeteurn was involved with the mailings. Given the implausibility of Saeteurn's story, we find that the district court did not abuse its discretion. As a predicate for admitting evidence of the mailings, the government need not prove Saeteurn's involvement with them beyond a reasonable doubt; it need only offer "sufficient evidence to support a finding by the jury" that he was involved. United States v. Miller, 874 F.2d 1255, 1268 (9th Cir.1989).
 
 
 13
 Next, Saeteurn argues that the mailings were not sufficiently similar to the elephant shipment to be admissible. On occasion, we have stated that when the prosecution seeks to introduce evidence of prior criminal conduct to prove knowledge, it must show that the prior conduct is similar to the charged conduct. Thus, in United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir.1979), we required the government "to establish a logical basis from which to infer knowledge of the presence of heroin in [a] vehicle from evidence that [he] had smuggled marijuana in a backpack on a prior occasion." Id. at 1108; see also Fed.R.Evid. 404(b).
 
 
 14
 But similarity is not always required. What counts is whether the government can establish that the evidence of the prior conduct is relevant to the issue of knowledge. United States v. Arambula-Ruiz, 987 F.2d 599 (9th Cir.1993); United States v. Ramirez-Himenez, 967 F.2d 1321, 1326 (9th Cir.1992). Here, the government argued that the pattern of the mailings--not the fact of them--is probative of Saeteurn's knowledge that the elephants contained opium. It contended that the best explanation for the fact that mailings continued until August 20, 1990 but then stopped is that Saeteurn knew that there was opium in the elephants, and upon realizing that the government had opened them on September 19, not only abandoned the elephants but also instructed the person who had been sending the mailings to stop doing so. The "Dear Friend" letter is consistent with the government's version of events. Thus, evidence that there were mailings and that they stopped after August is relevant to Saeteurn's knowledge that the elephants contained opium, and does not invite an impermissible inference ... even though the mailings and the elephant incident are dissimilar.
 
 
 15
 Finally, Saeteurn argues that even if evidence of the mailings would have been admissible under Rule 404(b), it would have been inadmissible under Rule 403 because its prejudicial effect outweighs its probative value. However, the pattern of the mailings is, as just discussed, probative of the government's theory of the case without focusing on propensity and inviting a prejudicial inference. The district court did not abuse its discretion in so finding. See United States v. Spencer, 1 F.3d 742, 744 (9th Cir.1992) (district court has "wide latitude" in making Rule 403 determination to which this court gives "considerable deference").
 
 
 16
 We conclude that the district court did not abuse its discretion in denying Saeteurn's motion to sever count three from counts one and two.
 
 III
 THE HEARSAY CLAIMS
 
 17
 This court reviews for abuse of discretion the district court's decision to admit evidence over hearsay objections. United States v. Kirk, 844 F.2d 660, 663 (9th Cir.1988).
 
 A. The "Dear Friend" letter
 
 18
 The district court admitted the "Dear Friend" letter as the statement of a coconspirator made in the course and furtherance of a conspiracy. See Fed.R.Evid. 801(d)(2)(E). While there is no dispute that there was a conspiracy to import opium, Saeteurn contends that the requirements of Rule 801(d)(2)(E) were not satisfied because there was insufficient evidence to establish (1) that he and the letter's author were part of that conspiracy, and (2) that the statements in the letter were made in furtherance of the conspiracy.[1]
 
 
 19
 * A defendant's knowledge of and participation in a conspiracy are preliminary facts that must be established, by a preponderance of the evidence, before a coconspirator's out-of-court statements can be admitted. See United States v. Silverman, 861 F.2d 571, 576 (9th Cir.1988).[2] To establish these facts, the government cannot rely solely on the coconspirator statements themselves, but must produce some independent evidence which, viewed in light those statements, establishes the requisite connection between the defendant and the conspiracy. See id. While the government need show only a slight connection, United States v. Umagat, 998 F.2d 770, 772 (9th Cir.1993), the independent evidence must be "fairly incriminating:"
 
 
 20
 Evidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently corroborative ... to constitute proof, by a preponderance of the evidence, that the defendant knew of and participated in the conspiracy.
 
 
 21
 Silverman, 861 F.2d at 571.
 
 
 22
 There appear to be only two items of evidence that might provide the requisite connection between Saeteurn, the author of the "Dear Friend" letter, and the conspiracy to import opium. First, the author of the letter apparently knew about the elephant incident ("you said you are now in trouble").[3] Yet this awareness could mean either that he was part of the conspiracy or merely that Saeteurn had told him about his problems. Because this knowledge is consistent with perfectly innocent behavior, it is insufficient to support the required finding. See id.
 
 
 23
 On the other hand, the author says Saeteurn asked him to stop sending "stuff" because Saeteurn was in trouble. While hearsay, this statement is consistent with the independent fact that the all shipments of opium to Saeteurn's residence evidently stopped after the elephant incident. This independent corroboration of the statement is sufficient to establish the connection between Saeteurn, the letter's author, and the conspiracy. See, e.g., United States v. Brooklier, 685 F.2d 1208, 1219-20 (9th Cir.1982), cert. denied 459 U.S. 1206 (1983).
 
 2
 
 24
 We review a district court's finding that a statement was made in furtherance of a conspiracy for clear error. Arrias-Villanueva, 998 F.2d at 1502. Assuming that the letter was written by a coconspirator, the natural interpretation is that it was written in furtherance of the conspiracy. The author is confirming that he has stopped shipping opium per Saeteurn's request, and will begin shipping it again when Saeteurn tells him the coast is clear.
 
 3
 
 25
 We conclude, therefore, that the letter was admissible under Fed.R.Evid. 801(d)(2)(E).
 
 B. The airway bill
 
 26
 The district court admitted into evidence over Saeteurn's hearsay objection an air freight bill found in the glove compartment of his abandoned truck. The court stated that it was admitting the bill solely for the purpose of proving that it was found in the truck, but gave no limiting instruction to that effect. While this omission was error, we conclude that it was harmless beyond a reasonable doubt. See United States v. Bibbero, 749 F.2d 581, 584 (9th Cir.1984), cert. denied, 471 U.S. 1103 (1985) (errors in admitting hearsay subject to harmless error analysis).
 
 
 27
 Saeteurn admitted that he went to the airport on about the date indicated on the airbill, and that he picked up the items specified on the airbill. RT (12/1/92) 854-55. Thus to the extent that the airbill was relevant to show these facts, any error in its admission was harmless. The airbill also contains an assertion that the sender of the items was Prasarn Chooratapa--the same individual who was designated as sender on the elephants' shipping labels. But whether Chooratapa actually shipped the chairs and the elephants was not relevant to the government's case. The name on the airbill was relevant only to impugn Saeteurn's testimony that while he had noticed that the elephants' shipping labels showed Chooratapa as their shipper, he did not recognize the name or know who that was. See RT (12/1/91) 922:13-21. To draw the inference that Saeteurn was being less than candid, one need not look to the bill for the truth of the matter it asserts (that Chooratapa was the shipper); one need only note that the Chooratapa was named as shipper on the bill, something that is not hearsay. The bill contains no other relevant hearsay assertions, and we therefore conclude that any error in its admission was harmless beyond a reasonable doubt.
 
 
 28
 C. The vehicle documents and Agent Mourad's testimony
 
 
 29
 regarding the absence of a theft report
 
 
 30
 The government introduced into evidence three documents showing that Saeteurn purchased another truck a month after the elephant incident. The district court admitted these under the residual exception to the hearsay rule, Fed.R.Evid. 801(24), over Saeteurn's objection. The government also called Customs Agent Brian Mourad, who testified that there was no record of a theft report on the truck Saeteurn abandoned. The district court admitted this testimony under Fed.R.Evid. 803(10) over Saeteurn's hearsay objection.
 
 
 31
 We need not decide whether the district court properly admitted this evidence. Even if it all was erroneously admitted, the error was harmless. Saeteurn admitted to having purchased a new truck shortly after the elephant incident, so the documents added nothing to the government's case. See RT (12/1/92) 821. Similarly, Saeteurn admitted that he never contacted the police about the truck after abandoning it, so Mourad's testimony added nothing. See RT (12/1/92) 815. There are no other assertions in the documents or in Mourad's testimony that are relevant.
 
 IV
 SUFFICIENCY OF THE EVIDENCE
 
 32
 Finally, Saeteurn contends that there was insufficient evidence to convict him of the crimes charged. We must affirm if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 33
 * Saeteurn's knowledge that the elephants contained opium is the only disputed element of the offenses charged in counts one and two. Saeteurn argues that his evasive action and ultimate abandonment of the truck and elephants provide an insufficient basis to establish this element, noting that this same evidence was used against Saephanh and that the district court dismissed the charges against him. However, Saeteurn's analysis neglects the "Dear Friend" letter and the pattern of the mailings. The letter, along with the evidence that the mailings stopped after the elephant incident, when combined with the evasive action and abandonment of the truck and elephants, is sufficient to support a finding that Saeteurn knew the elephants contained opium, and therefore sufficient to sustain his convictions of counts one and two.
 
 B
 
 34
 Count three charged a conspiracy to import opium. Saeteurn contends that there is insufficient evidence to support his conviction of this count for two reasons: (1) There was insufficient evidence to connect him with the mailings of opium, and (2) there was insufficient evidence to connect the mailings with the elephants. We find no merit in these arguments.
 
 
 35
 Assuming, without deciding, that there was insufficient evidence to connect Saeteurn and the mailings or to connect the mailings with the elephants, we conclude that these failures of proof would be harmless. To convict Saeteurn of the conspiracy charged in count 3, the government had to prove only (1) an agreement to accomplish an illegal objective, (2) one overt act in furtherance of that objective, and (3) the requisite intent to commit the underlying offense. United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987). We already have determined that there was sufficient evidence to convict Saeteurn of counts one and two. The only element of the conspiracy charged in count three that is not established by Saeteurn's conviction of counts one and two is an agreement. Saeteurn's knowledge that the elephants contained opium necessarily establishes that he had an agreement with their shipper. Therefore, the evidence introduced to support his convictions of counts one and two also is sufficient to support his conviction of count three.
 
 
 36
 That the conspiracy to import opium in the elephants may not have extended over the entire period of time charged in the indictment is of no consequence. The time during which a conspiracy lasted is not a material element of the crime. United States v. Laykin, 866 F.2d 1534, 1542-43 (9th Cir.1989).
 
 CONCLUSION
 
 37
 We conclude that the district court properly denied Saeteurn's motions for a Franks hearing and to sever count three from counts one and two. To the extent that the court erroneously admitted certain hearsay evidence, we find that any error was harmless beyond a reasonable doubt. The cumulative effect of all of the trial court's rulings challenged by Saeteurn did not deprive Saeteurn of a fair trial or otherwise require reversal. Finally, we conclude that there was sufficient evidence to support Saeteurn's convictions of all counts. Accordingly, the judgment of the district court is affirmed.
 
 
 38
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Saeteurn also argues that the letter was not properly authenticated. However, the letter was authenticated by the fact that it was addressed to him and was found in his apartment. See Burgess v. Premier Corp., 727 F.2d 826, 835 (9th Cir.1984)
 
 
 [2]
 The standard of review we apply to this determination is unclear. Compare United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir.1993) (de novo review); with United States v. Arambula-Ruiz, 987 F.2d 599, 607 (9th Cir.1993) (abuse of discretion); and United States v. Homick, 964 F.2d 899, 905 (9th Cir.1992) (clear error). We need not resolve the question here, however, for we conclude that under any standard, the letter was admissible
 
 
 [3]
 Used to demonstrate the writer's awareness of Saeteurn's predicament, the statement is not hearsay, and hence can itself count as independent evidence. See United States v. Brooklier, 685 F.2d 1208, 1219-20 (9th Cir.1982), cert. denied, 459 U.S. 1206 (1983)