UNITED STATES of America,
Plaintiff-Appellee,

v.

David G. BETTENCOURT,
Defendant-Appellant.

No. 79–1276.

United States Court of Appeals,
Ninth Circuit.

Feb. 22, 1980.

Michael A. Weight, Weight & Ellsworth, Honolulu, Hawaii, for defendant-appellant.

Walter M. Heen, U. S. Atty., Honolulu, Hawaii, on brief; Elliot Enoki, Asst. U. S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before WRIGHT, GOODWIN and SCHROEDER, Circuit Judges.

GOODWIN, Circuit Judge:

David Bettencourt appeals his conviction under 18 U.S.C. § 111 for interfering with a federal officer in the performance of his official duties. Bettencourt asserts that he was deprived of due process by prosecutorial misconduct before the grand jury, that testimony concerning his prior state arrest was improperly admitted, and that the trial judge incorrectly instructed the jury on the elements of the offense charged. We affirm the conviction.

On May 30, 1978, Bettencourt, an attorney, was in the basement of the Federal Building in Honolulu to observe a search of a client's car by Secret Service agents. He had obtained permission from the local special agent in charge to be present during the search. Once the search began, Bettencourt started photographing the agents' actions. When the agents told Bettencourt that taking pictures was prohibited in the Federal Building, he persisted, and the agents consequently decided to postpone the search.

The agents then attempted to move the car from the search area to another part of the basement which was enclosed by a chain-link fence, but Bettencourt prevented this move by standing behind the car. Bettencourt blocked the car until he was assured that it was not being moved out of the building, but only into a secured area, and that the search was not to be continued, but would be resumed at some later time. As the car was being moved into the secured area, Bettencourt attempted to force his way past Special Agent Donald Wilson, who was closing the gate to the enclosure. In attempting to enter the secured area, Bettencourt twice struck Agent Wilson with blows which witnesses variously described as "body blocks" or "shoves". The agents then took Bettencourt into custody. The search was completed in his absence.

A grand jury subsequently indicted Bettencourt for violating 18 U.S.C. § 111, charging, in part, that he "did forcibly assault, impede, intimidate *and* interfere with Special Agent Donald Wilson * * *." (Emphasis added.) The conjunctive wording of this indictment did not track the disjunctive language of the statute.[1]

Two events that are relevant to this appeal occurred at trial. First, the district court, over objection, admitted testimony that Bettencourt had been arrested for interfering with local police officers during the course of a search on August 9, 1977, 21 months before the incident in the Federal Building. Honolulu Police Department Detective Samuel Foster, relying on another officer's report, testified that Bettencourt had been arrested after attempting to prevent police from entering a client's home by blocking the doorway, because the officers did not have a search warrant. Bettencourt disputed this description of the incident, but, whatever the truth, it is apparent that Bettencourt was not prosecuted following his arrest and that he was later successful in having his arrest record expunged. The district judge admitted Detective Foster's testimony under Fed.R.Evid. 404(b) (evidence of an act going to prove Bettencourt's knowledge or intent).

The second relevant trial event occurred when the trial judge, again over objection, instructed the jury on the essential elements of the offense, adopting the disjunctive phrasing of the statute rather than the conjunctive language of the indictment.

Bettencourt argues, first, that two broad types of prosecutorial misconduct, use of "perjured" testimony and "slanted" presentation of applicable law, deprived him of due process before the grand jury. This contention is without merit.

In *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974), this court found that a prosecutor's presentation of perjured testimony relating to a material matter resulted in a

---

1. 18 U.S.C. § 111 provides, in relevant part, that "[w]hoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both."

denial of due process before a grand jury. More recent decisions from this circuit have suggested that prosecutorial misconduct must be "flagrant" to violate due process. *See, e. g., United States v. Vargas-Rios,* 607 F.2d 831 (9th Cir. 1979); *United States v. Kennedy,* 564 F.2d 1329, 1338 (9th Cir. 1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978). Nothing in the record of this case supports an inference that the prosecutor was aware of any inaccuracy in the testimony presented. Nor were the alleged inaccuracies material.

Similarly, any "slanting" or evasiveness by the prosecutor in responding to grand jurors' questions concerning Bettencourt's legal rights while in the Federal Building did not so mislead or prejudice the grand jury as to deny due process. The grand jury transcript demonstrates the panel's independence in exploring Bettencourt's authority to observe and photograph the search. Any prosecutorial misconduct in this respect does not warrant reversing Bettencourt's conviction under our necessarily limited review of the underlying indictment. *See United States v. Chanen,* 549 F.2d 1306 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977).

Bettencourt next contends that the admission of evidence concerning his earlier state arrest was improper for three reasons. First, he claims that the police record upon which Detective Foster relied in testifying was Jencks Act material which the government had agreed to disclose to Bettencourt before trial but had not disclosed. Second, he claims that evidence concerning the prior incident was inadmissible under Fed.R.Evid. 403. And, finally, because the state arrest

had been expunged, he claims that Detective Foster's testimony violated Bettencourt's "reasonable expectation of privacy" concerning his arrest.

■ We reject Bettencourt's arguments concerning the release of Jencks Act material. Even if, as Bettencourt claims, the prosecutors agreed to release all Jencks Act statements before trial in return for Bettencourt's withdrawal of his motion for a bill of particulars,[2] the police report upon which Detective Foster relied was not a "statement" discoverable under the Jencks Act.

The applicable section of the Jencks Act, 18 U.S.C. § 3500(e)(1), defines a "statement" as "a written statement made by [a] witness and signed or otherwise adopted or approved by him". For purposes of the Act, then, "only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment." *Palermo v. United States,* 360 U.S. 343, 352, 79 S.Ct. 1217, 1224, 3 L.Ed.2d 1287 (1959). Here, the report on which Detective Foster relied was prepared by another Honolulu police officer, James Nobriga; consequently, the statement which Bettencourt asserts should have been disclosed was not "made by" the witness Foster, and thus, was not a "statement" under the Act.[3]

■ Bettencourt correctly argues, however, that Detective Foster's testimony should have been excluded under Fed.R. Evid. 403 because, even if the testimony was relevant, its prejudicial effect "substantially outweighed" its probative value.[4]

2. The scope of the pretrial agreement is unclear. However, the only evidence of the agreement, a statement by Bettencourt's attorney at a motions hearing, does not refer to the Jencks Act. This implicitly supports the government's assertion that the disclosure agreement referred to a very limited body of material:

> "MR. WEIGHT: Initially, Your Honor, the Government and I have entered into an agreement whereby in return for access to certain statements and the tape recorded statement made by my client to the Secret

Service, on that basis I will withdraw the motion for a bill of particulars * * *."

3. Because the material here clearly would not have been discoverable under the Jencks Act, we need not address the government's arguments regarding the application of the Jencks Act to material used to refresh a witness's memory or Bettencourt's contention concerning the prejudicial effect of nondisclosure.

4. Fed.R.Evid. 403 provides as follows:

> "Although relevant, evidence may be excluded if its probative value is substantially

The trial court admitted this testimony under Fed.R.Evid. 404(b), as evidence of a prior similar act going to establish Bettencourt's state of mind during the incidents at the Federal Building.[5] Under either Rule 403 or Rule 404(b), in order for the evidence of prior similar acts to be admissible, its probative value must exceed the potential prejudicial effect of its admission. *See United States v. Hernandez-Miranda*, 601 F.2d 1104, 1107–09 (9th Cir. 1979); *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977). Detective Foster's testimony did not satisfy that requirement.

The probative value of the evidence in establishing Bettencourt's specific intent was minimal. The evidence may have tended to prove a turbulent or quarrelsome disposition, but that kind of proof was not relevant in this case. While the offense for which Bettencourt was arrested by the Honolulu police was similar to the one charged here, that incident occurred almost two years earlier. Moreover, except to prove Bettencourt's propensity to resort to self help, a commentary on his character, there is no rational connection between the two occurrences. The government does not claim that Bettencourt was engaged in a continuing pattern or practice of assaulting police officers. In a related sense, although the testimony was slightly probative of Bettencourt's intent at the time of the alleged crime, specific intent to assault or impede is not ordinarily transferrable to events two years apart. Discrete intent, spontaneously resulting from a unique set of circumstances, is the more usual case.[6]

A showing of intent to assault on an earlier occasion proves little, if anything, about an intent to assault at some later time.[7] Finally, Bettencourt was never pros-

---

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

5. Fed.R.Evid. 404(b), "*Other crimes, wrongs, or acts,*" provides as follows:

"Evidence of other crimes, wrongs, or acts is *not admissible to prove the character of a* person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

6. The cases in which this circuit has approved the admission of evidence of prior similar acts to prove state of mind have concerned offenses involving nonspontaneous intent. *See, e. g., United States v. Herrell*, 588 F.2d 711 (9th Cir. 1978), *cert. denied*, 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979) (possession of firearm by convicted felon, same gun involved in prior offense); *United States v. Espinoza*, 578 F.2d 224 (9th Cir.), *cert. denied*, 439 U.S. 849, 99 S.Ct. 151, 58 L.Ed.2d 151 (1978) (transportation of illegal aliens, similar act 11 days earlier); *United States v. Walls*, 577 F.2d 690 (9th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978) (mail fraud); *United States v. Brashier*, 548 F.2d 1315 (9th Cir. 1976) (illegal investment schemes); *United States v. Nichols*, 534 F.2d 202 (9th Cir. 1976) (interstate transportation of lost or stolen credit cards).

7. *See United States v. San Martin*, 505 F.2d 918 (5th Cir. 1974):

"* * * [P]rior crimes involving deliberate and carefully premeditated intent—such as fraud and forgery—are far more likely to have probative value with respect to later acts than prior crimes involving a quickly and spontaneously formed intent—such as [the] assault [under 18 U.S.C. § 111] before us.

"* * * [T]he evidence of prior crimes involving intent of the moment are hardly ever probative of later acts involving similarly split-second intent. Indeed, such prior crimes have less to do with the type of specific intent that may arise later, as in fraud, than they do with the defendant's overall disposition or character * * *." 505 F.2d at 923.

The government cites *United States v. Sangrey*, 586 F.2d 1312 (9th Cir. 1978), as supporting the admission, under Rule 404(b), of evidence of an earlier assault to prove specific intent to assault at some later time. In *Sangrey*, this court held that a rape victim's testimony concerning the defendant's assault on her was admissible in establishing his intent in assaulting another woman. There, however, both rapes were part of a single episode, committed in the same place within moments of each other. *Cf. United States v. Carleo*, 576 F.2d 846 (10th Cir.), *cert. denied*, 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978) (evidence that defendant severely beat a suspected informant and then told a prospective grand jury witness who observed the beating, "That's

ecuted or convicted following his state arrest, so his state of mind in the prior incident may have been wholly innocent. At best it remains unknown. The first episode proved nothing about specific intent. Because intent on that earlier occasion was never proved, there is no basis for inferring that Bettencourt intended to assault or interfere with the state officers then, or with federal officers now. Detective Foster's testimony, based on another officer's report, was not only hearsay, but useless hearsay. It established no basis for an inference one way or another. *See United States v. Brashier*, 548 F.2d at 1325.

■ Balanced against the minimal probative value of the fact of an arrest is the substantial, perhaps inherent, prejudicial potential of such evidence for the jury. Even though carefully instructed, as they were in this case, jurors are likely to regard such evidence of a past act as proof of a defendant's turbulent character and to conclude that he acted consistently with that character at the time charged in the indictment. Thus, although the weighing of probative value against prejudicial effect of admitting evidence of prior acts is within the trial judge's sound discretion, *United States v. Riggins*, 539 F.2d 682, 683 (9th Cir. 1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 749, 50 L.Ed.2d 758 (1977), the district court in this instance incorrectly struck this balance and should not have admitted Detective Foster's testimony. The government had no business offering such evidence. The remaining question is whether the use of evidence which should never have been offered and which should have been excluded was harmless error.

This circuit's standard for reviewing non-constitutional errors in admitting evidence is that "these errors are reversible only if it

is more probable than not that the erroneous admission of the evidence materially affected the jurors' verdict * * *." *United States v. Awkard*, 597 F.2d 667, 671 (9th Cir. 1979), *citing United States v. Valle-Valdez*, 554 F.2d 911 at 914 (9th Cir. 1977). In this case, the legal evidence was overwhelming (the testimony of four eyewitnesses) that Bettencourt twice struck or pushed Agent Wilson as the agent attempted to close the gate to the secured area. In light of this testimony, although the behavior of the prosecutor in offering the evidence concerning Bettencourt's prior arrest was wholly inexcusable, the evidence was merely cumulative on the issue of intent. The "more probable than not" test is not satisfied. *See United States v. Hernandez-Miranda*, 601 F.2d at 1109; *United States v. Coades*, 549 F.2d 1303, 1306 (9th Cir. 1977).

Similarly, we must reject Bettencourt's contention that his conviction should be reversed because Detective Foster's testimony violated a "reasonable expectation of privacy" resulting from the expunction of Bettencourt's state arrest record. Bettencourt reasons as follows: the expunction created a "reasonable expectation" (of privacy) that his arrest would not be used as evidence against him in future judicial proceedings; Detective Foster's testimony violated that "expectancy"; and federal prosecutors should be barred by the "Silver Platter" doctrine of *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), from presenting state officer Foster's "illegal" testimony.

Under Hawaii law, a person who is arrested for, but not convicted of, a crime may apply to the state attorney general for an order expunging his arrest record. Haw.Rev.Stat. § 831–3.2.[8] If, as in Bet-

---

what happened to snitches", was admissible in an obstruction of justice prosecution). Unlike the prior arrest here, the assaults in these cases were closely related to the offenses for which the defendants were charged.

8. Hawaii Revised Statutes § 831–3.2, the expunction statute, reads, in relevant part, as follows:

"(a) The attorney general, or his duly authorized representative within the department of the attorney general, upon written application from a person arrested for, or charged with but not convicted of a crime, shall issue an expungement order annulling, canceling, and rescinding the record of arrest * * *.

\* \* \* \* \* \*

tencourt's case, the requested order is issued, the applicant is permitted by statute to state under oath that, with reference to the expunged arrest, he has no arrest record.[9] Under the expunction statute, a public official may divulge a record of an expunged arrest only to assist in the preparation of a presentence report or to cooperate in a federal investigation of an applicant for a national security position.[10] Any other disclosure, including trial testimony, is prohibited.

Detective Foster's testimony that Bettencourt had been arrested violated state law, and, by preventing Bettencourt from testifying that he had not been arrested, subverted the statutory expunction scheme. The government's presentation of evidence of Bettencourt's state arrest was improper and unprofessional in these circumstances. The prosecutor's performance justifies concern about lawyer competence. But it does not follow that the defendant's conviction must be reversed. Given the overwhelming evidence supporting the jury's verdict, we must conclude that counsel's error, while inexcusable, was harmless, and that the court's error in allowing the evidence to come in, was also harmless.

▆▆▆▆ Bettencourt argues, finally, that the district court erred when it instructed the jury on the elements of the offense, adopting the disjunctive language of 18 U.S.C. § 111,[11] rather than the conjunctive wording that had been used in the indictment.[12] Bettencourt's assertion that the trial judge "substantially altered" the language of the indictment is baseless. In the absence of a variance or other fatal defect in the indictment, a jury may convict on a finding of any of the elements of a disjunctively defined offense, despite the grand jury's choice of conjunctive language in the indictment. *See, e. g., United States v. Abascal*, 564 F.2d 821, 832 (9th Cir. 1977), *cert. denied*, 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978); *United States v. Hobson*, 519 F.2d 765 (9th Cir. 1975), *cert. denied*, 423 U.S. 931, 96 S.Ct. 283, 46 L.Ed.2d 261 (1975). Here, the court, by instructing the jury in the disjunctive, simply and properly informed the jurors that they need not find all elements charged in the indictment to convict.

Affirmed.

"(d) Records filed under subsection (c) shall not be divulged except upon inquiry by:
  (1) A court of law or an agency thereof which is preparing a presentence investigation for the court; or
  (2) An agency of the federal government which is considering the subject person for a position immediately and directly affecting the national security.
  Response to any other inquiry shall not be different from responses made about persons who have no arrest record.
  "(e) The attorney general or his duly authorized representative within the department of the attorney general shall issue to the person for whom an expungement order has been entered, a certificate stating that the order has been issued and that its effect is to annul the record of a specific arrest. The certificate shall authorize the person to state, in response to any question or inquiry, whether or not under oath, that he has no record regarding the specific arrest * *."

9. Haw.Rev.Stat. § 831–3.2(e).

10. Haw.Rev.Stat. § 831–3.2(d).

11. *See* 18 U.S.C. § 111, *supra* n.1.

12. The grand jury charged that Bettencourt "did forcibly assault, impede, intimidate, and interfere" with Agent Wilson.