**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kong Yin CHU, a.k.a.: Alfred Chu, Chu Kong Yin, Defendant–Appellant.**

**No. 92–10095.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1993.

Decided Sept. 21, 1993.

---

Doron Weinberg, Nina Wilder, Law Offices of Doron Weinberg, San Francisco, CA, for defendant-appellant.

Barbara Brennan Silano, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellee.

Before: POOLE, BOOCHEVER, and FERNANDEZ, Circuit Judges.

BOOCHEVER, Circuit Judge:

Kong Yin Chu (a.k.a. Chu Kong Yin) appeals his conviction for making a material false statement under oath on an immigration application in violation of 18 U.S.C. § 1546. We affirm.

## BACKGROUND

On November 15, 1983, Chu completed an Application for Status as a Permanent Resident at the offices of the Immigration and Naturalization Service. That application included the following question: "I ____ have ____ have not been arrested, convicted or confined in a prison. (If you have been, explain.)" Chu put an "X" next to "have not." The application also called for the applicant to "list below all organizations, societies, clubs, and associations, past or present, in which you have held membership in the United States or a foreign country, and the periods and places of such membership." Chu responded by stating, "None." Finally, the application asked whether the applicant had committed or been convicted of a crime involving moral turpitude. Chu indicated that he had not.

On September 20, 1988, a six-count indictment was filed against Chu in the district court. Counts One and Four charged that Chu made false statements to federal agents (Count One) and on the immigration application (Count Four) by indicating that he had never been a member of an organization, society or club when he had previously been convicted of membership in a triad society in Hong Kong. Counts Two and Five charged that Chu made false statements to federal agents (Count Two) and on the immigration application (Count Five) by stating that he had never been arrested or convicted of a crime when he had previously been convicted in Hong Kong of larceny, carnal knowledge of a girl between the ages of 13 and 16, criminal intimidation, and gambling in a gambling establishment. Counts Three and Six charged that Chu made false statements to federal agents (Count Three) and on the immigration application (Count Six) by stating that he had never been arrested or convicted of a crime of moral turpitude when he had been convicted of the aforementioned crimes.

Chu was convicted on all six counts on May 12, 1989. On appeal, we reversed the convictions on Counts One, Three, Four, and Six because certain exhibits contained hearsay and had been admitted into evidence without adequate foundation. *United States v. Chu Kong Yin,* 935 F.2d 990 (9th Cir.1991). We further held that double jeopardy barred retrial on the reversed counts and remanded for retrial on Counts Two and Five.

On remand, the district court granted Chu's motion to strike from the indictment any reference to previous convictions other than the one for gambling. Before trial Chu stipulated to the gambling conviction, and the district court excluded all evidence of Chu's other convictions. On January 10, 1992, the jury convicted Chu of Count Five and acquitted him of Count Two.

Chu was sentenced on February 14, 1992, and filed a timely notice of appeal. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## DISCUSSION

### I. *Adequacy of Jury Instructions Defining "Oath."*

Section 1546 makes it a crime to knowingly make[ ] *under oath, or as permitted under penalty of perjury* under section 1746 of title 28, United States Code, knowingly subscribe[ ] as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly present[ ] any such application, affidavit, or other document containing any such false statement....

18 U.S.C. § 1546(a) (1988) (emphasis added). Chu argues that the district court misstated in its jury instructions the requirements for making a statement under oath. The district court initially gave the following instruction on the § 1546 charge:

In order for the defendant to be found guilty of [violating § 1546], the government must prove each of the following elements beyond a reasonable doubt.

....

First, that the defendant made a false statement;

Second, that such false statement was made knowingly;

Third, that the statement was material to the Immigration and Naturalization Service's activities or decisions;

Fourth, that such statement was made under oath;

And fifth, that such statement was made ... in an application required by the immigration laws or regulations prescribed thereunder of the United States of America.

During its deliberations the jury submitted the following written question to the judge:

"Does 'such statement was made under oath' mean signing your name, verbally swearing or both ...?" The court responded orally to the jury as follows:

No. You don't have to verbally raise your hand and swear. However, when you sign. I John Doe so swear, you have to understand that your writing is your acknowledging that you swear.

But there's no formal requirement that you raise your right-hand, stand up and raise your right-hand. It's just that, but you have to know when you do write your name you're swearing on the correctness of it.

Because Chu did not object to the instruction at the time it was given, we review the instruction for plain error. *United States v. McCollum*, 802 F.2d 344, 346 (9th Cir.1986). Accordingly, we may reverse Chu's conviction for failing to give a proper instruction only if it " 'so affected the jury's ability to consider the totality of the evidence fairly that it tainted the verdict and deprived [Chu] of a fair trial.' " *United States v. Hoac*, 990 F.2d 1099, 1108 (9th Cir.1993) (quoting *United States v. Smith*, 962 F.2d 923, 935 (9th Cir.1992)).

We are unaware of any case law that elaborates on the § 1546 requirements for making a statement under oath. Because the general perjury statute, 18 U.S.C. § 1621,[1] also uses the word "oath," however, we draw on cases defining the term in that context. Principles of statutory construction encourage us to construe "oath" as used in § 1546 the same as "oath" as used in § 1621 both because the language is similar and because § 1546 was enacted after § 1621. *See Northcross v. Board of Educ.*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973) (similar language used in two different civil rights laws should be interpreted similarly);

---

1. Section 1621 provides in part:

Whoever—

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under [28 U.S.C. § 1746], willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury....

18 U.S.C. § 1621 (1988).

*Nachman Corp. v. Pension Benefit Guaranty Corp.*, 592 F.2d 947, 952–53 n. 6 (7th Cir.1979) (earlier specific definition of a term may properly color subsequent use of same term), *aff'd*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980).

In *United States v. Yoshida*, 727 F.2d 822, 823 (9th Cir.1983), we held in interpreting § 1621 that

> [n]o particular formalities are required for there to be a valid oath. It is sufficient that, in the presence of a person authorized to administer an oath ... the affiant by an unequivocal act consciously takes on himself the obligation of an oath, and the person undertaking the oath understood that what was done is proper for the administration of the oath and all that is necessary to complete the act of swearing.

The district court's instructions adequately trace this statement.

Chu is correct that the district court neither explicitly found that Ruben Banda, the Immigration Examiner, was authorized to administer the oath nor instructed the jury on the requirement. Chu did not request such an instruction, nor did he raise the issue by objecting to the instruction given. It is clear, however, that immigration officers have the authority to administer oaths. 8 C.F.R. § 287.5 (1993). Accordingly, we hold that the district court's instruction did not constitute plain error.

II. *Sufficiency of the Evidence to Convict Chu of Violating § 1546.*

 Chu contends that because Banda could not specifically recall interviewing him but could only testify that it was his practice to place interviewees under oath, there was insufficient evidence to convict him of violating § 1546. Typically, in reviewing a challenge to the sufficiency of the evidence, we ask whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Where the defendant fails to move for a judgment of acquittal under Fed. R.Crim.P. 29(a) on the ground that the evidence is insufficient to support the verdict, however, we examine the issue "under a more rigorous standard of review for plain error to prevent a 'miscarriage of justice.'" *United States v. Roston*, 986 F.2d 1287, 1289 (9th Cir.1993) (quoting *United States v. Curtis*, 568 F.2d 643, 647 (9th Cir.1978)), *petition for cert. filed* (1993). Because Chu did not make a Rule 29(a) motion, we review his claim for plain error.

Banda's testimony is sufficient for a jury to find that he placed Chu under oath. Banda testified that it was his practice to bring applicants into the interviewing cubicle and administer an oath before questioning them about their applications, that his signature on the application proved he conducted Chu's interview, and that the other red marks throughout the application indicated that ordinary procedure was followed in this case. Moreover, Chu signed the application under the paragraph which reads:

> I, _____, do swear (affirm) that I know the contents of this application subscribed by me including the attached documents, that the same are true to the best of my knowledge, and that corrections numbered ( ) to ( ) were made by me or at my request, and that this application was signed by me with my full, true name.

Below Chu's signature was a jurat reading, "Subscribed and sworn to before me by the above-named applicant at _____ on _____." The blanks were filled in with the appropriate information, and Banda signed the statement as the administering officer. This is additional evidence that Chu completed the application under oath. *Yoshida*, 727 F.2d at 823 (jurat in affidavit reading, "Subscribed and sworn to before me ...," was evidence that statement had been made under oath); *United States v. Arias*, 575 F.2d 253, 254 (9th Cir.) (recital in official trial transcript that defendant was sworn is sufficient evidence that statements in question were made under oath), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978).

III. *District Court's Decision to Disallow Chu from Calling Assistant United States Attorney as a Defense Witness.*

 On cross-examination of the prosecution's chief witness, Mr. Banda, Chu's attor-

ney questioned Banda's ability to recall the details of his interview with Chu nine years earlier. The attorney pressed the point that Banda could not recall the interview when he testified at Chu's first trial in 1989 but could now recall the interview at the second trial in 1992. Chu's attorney asked Banda, "Did you happen to discuss this revitalization—your testimony, did you happen to discuss this testimony before trial with the Assistant U.S. Attorney?" Banda responded that he had not.

When cross-examining another government witness, Special Agent Lawrence Lagarejos, Chu's attorney asked whether he had seen Banda talk to the Assistant U.S. Attorney before Banda testified. Agent Lagarejos responded that he had. In an effort to resolve the apparent contradiction, Chu's attorney asked the government to stipulate that Banda had had a conversation with the Assistant U.S. Attorney (AUSA) before testifying. The government refused to agree to the stipulation, arguing that Chu's counsel had merely asked Banda whether he had discussed the testimony he gave at the first trial with the AUSA before testifying at the second trial, not whether he had ever spoken to the AUSA at all. Thus the government maintained that no inconsistency existed because Banda had never denied speaking with the AUSA altogether. When the government refused Chu's requested stipulation, Chu sought to call the AUSA as a witness. The district court prohibited Chu from calling Silano, but authorized him to recall Banda to clarify any ambiguity. Chu declined to do so.

■ Chu claims that the district court's decision prohibiting him from calling the AUSA to the stand was reversible error. The government argues that to call the AUSA as a witness would have been impermissible under Fed.R.Evid. 608(b), which excludes extrinsic evidence of a specific instance of conduct of a witness offered to attack the witness' credibility. We review the admissibility of evidence involving factual determinations for an abuse of discretion. *United States v. Sanchez–Robles,* 927 F.2d 1070, 1077–78 (9th Cir.1991).

■ Chu sought to call the AUSA to impeach Banda by offering contradictory testimony. Rule 608(b) prohibits the introduction of extrinsic evidence where the only theory of relevance is impeachment by prior misconduct. 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 608[5] (1993). Rule 608(b) does not address whether extrinsic evidence is admissible under the theory of impeachment by contradiction. *See United States v. Opager,* 589 F.2d 799, 802–03 (5th Cir.1979). The district court has broad discretion over whether to admit extrinsic evidence to rebut a witness' direct testimony, particularly on a matter collateral to the case. *Trust Services of Am., Inc. v. United States,* 885 F.2d 561, 569 (9th Cir. 1989); *United States v. Giese,* 597 F.2d 1170, 1190 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). In this case, the defense had a full opportunity to cross-examine Banda and was able to cast doubt on his testimony through cross-examination of Lagarejos. Moreover, the defense could well have clarified the issue by recalling Banda. Under these circumstances, we hold that the district court did not abuse its discretion in denying Chu the opportunity to call the AUSA.

Nevertheless, we note that the government has the obligation to see that all evidence relevant to a case is presented, even if unfavorable to its position. "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." Model Rules of Professional Conduct Rule 3.8 cmt. (1984); *accord* ABA Standards for Criminal Justice 3–1.1(b) (2d ed. 1980) ("The prosecutor is both an administrator of justice and an advocate. The prosecutor must exercise sound discretion in the performance of his or her functions."), 3–1.1(c) ("The duty of the prosecutor is to seek justice, not merely to convict."). While we do not believe the prosecutor was motivated by a desire to deceive the jury, we would have preferred that the government resolve the ambiguity in this case by stipulating to or otherwise informing the jury about what actually occurred.

## IV. *Motion for Mistrial Based on Alleged Prosecutorial Misconduct.*

Finally, Chu argues that we should reverse the district court's denial of his motion for mistrial based on alleged prosecutorial misconduct. Chu asserts that the government intentionally elicited known inadmissible testimony from Inspector John Hawksley of the Royal Hong Kong Police. *See United States v. Davenport,* 753 F.2d 1460, 1463 (9th Cir. 1985) (prosecutorial misconduct found where government elicited inadmissible propensity evidence without good faith). We review Chu's claim for clear error. *United States v. Pruitt,* 719 F.2d 975, 978 (9th Cir.) (denial of motion for mistrial based on prosecutorial misconduct reviewed for clear error), *cert. denied,* 464 U.S. 1012, 104 S.Ct. 536, 78 L.Ed.2d 716 (1983).

■ The government called Inspector Hawksley to testify to the circumstances surrounding Chu's arrest and conviction for gambling on the theory that they were relevant to show that Chu could not have forgotten about the crime when completing the residency application. Consistent with its holding before trial that evidence of all Chu's convictions but that of gambling would be inadmissible, the district court admonished the prosecutor to limit Hawksley's testimony to the gambling offense.

Chu contends that the prosecutor asked open-ended questions that were designed to elicit information beyond that permitted by the court's ruling. Specifically, to establish a foundation for Hawksley's recognizing Chu at the scene of the gambling raid, the prosecutor asked, "And can you tell me what was the nature of your first contact with the defendant." The defense objected, arguing that the question would call for Hawksley to discuss Chu's criminal history. The prosecutor stated that Hawksley would respond in a way that would not involve Chu's criminal history. The court ruled that Hawksley could simply answer whether or not he had had contact with Chu prior to arresting him for gambling. We find no evidence of prosecutorial misconduct in this exchange.

■ Next, to establish the circumstances of Chu's arrest for gambling, Hawksley stated that he had been given information that a casino was operating in a hotel. The defense objected to the narrative form of the testimony and was overruled. Hawksley testified that gambling is illegal in Hong Kong and is generally perceived to be controlled by a crime syndicate. The defense again objected and asked that the witness not be allowed to narrate and that the testimony proceed under a question-and-answer format. The defense also moved for a mistrial based in part on Hawksley's reference to the crime syndicate. After a sidebar conference, the court ruled that Hawksley could establish the circumstances of the arrest, but that the question-and-answer format should be used. The prosecutor specifically instructed Hawksley to avoid any references to events preceding the gambling raid. The testimony resumed with the commencement of the gambling raid.

We agree that Hawksley's statement that a crime syndicate controlled gambling operations in Hong Kong was irrelevant and improper. Admitting the statement was, however, harmless error. *United States v. Arambula–Ruiz,* 987 F.2d 599, 605 (9th Cir. 1993) (nonconstitutional errors in admitting evidence reversible " 'only if it is more probable than not that the erroneous admission of the evidence materially affected the jurors' verdict' ") (quoting *United States v. Bettencourt,* 614 F.2d 214, 218 (9th Cir.1980)). The statement was merely tangential to Hawksley's testimony and was never referred to in closing argument. *See id.* Moreover, Hawksley made only a general reference to a crime syndicate. He never testified that Chu was a member of the syndicate. Finally, Chu stipulated to his prior gambling conviction, and the evidence that he lied on his immigration application was overwhelming. It is not probable that Inspector Hawksley's statement materially affected the jury's verdict.

■ Chu also claims that Hawksley's testimony that Chu acted as a spokesperson for the group arrested in the gambling raid is a further example of the prosecutor's eliciting inadmissible testimony. Chu raised a hearsay objection and was overruled. Because Hawksley's testimony did not refer to any

out-of-court statement, the hearsay objection was meritless. Fed.R.Evid. 801(c). Furthermore, the statement was relevant to Chu's role in the gambling offense and hence to his recollection of the incident. Again, we see no evidence of prosecutorial misconduct.

 Finally, we hold that Hawksley's testimony on redirect examination that Chu was of "special interest" to the Hong Kong police was not the result of prosecutorial misconduct. On cross-examination, defense counsel inquired why Hawksley was in the courtroom when Chu plead guilty to the gambling offense. The defense asked whether Hawksley's attendance was required by Hong Kong law. Hawksley responded that he was present because he was "interested." The prosecutor on redirect examination sought to clarify the matter and asked Hawksley why he was in court that day. The defense objected, asserting that the question was beyond the scope of the cross-examination and immaterial. The court overruled the objection, and Hawksley responded that "that particular gentleman was a special interest to us." The district court did not abuse its discretion in admitting the testimony since Chu's attorney initiated the inquiry into the reason for Hawksley's presence in the courtroom without clarifying the matter. *Murray v. Toyota Motor Distributors, Inc.*, 664 F.2d 1377, 1380 (9th Cir.) (scope of redirect examination reviewed for abuse of discretion), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2905, 73 L.Ed.2d 1314 (1982); *United States v. Schaff,* 948 F.2d 501, 505 (9th Cir.1991) (determination of relevance reviewed for abuse of discretion). Having found that Hawksley's testimony was admissible, we conclude that the prosecutor's question eliciting the testimony was appropriate. Accordingly, we hold that the district court's denial of Chu's motion for mistrial based on prosecutorial misconduct was not clear error.

AFFIRMED.