83 F.3d 429
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
H. Wayne HAYES, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
H. Wayne HAYES, Jr., Defendant-Appellant.
 Nos. 93-10412, 93-10413.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1996.
Decided April 26, 1996.
 
 Before: CHOY, BEEZER, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 H. Wayne Hayes, Jr. appeals his conviction of fourteen counts of mail fraud, one count of wire fraud, and two counts of interstate transportation of stolen money. Hayes claims that: (1) the district judge was biased, (2) the district judge imposed a vindictive sentence, (3) the prosecution violated its Brady obligation by not producing evidence held by the SEC and Hawaii Attorney General's Office, (4) the prosecution violated its Brady obligation by not producing evidence that four of its witnesses were paid commissions for selling Apollo oil interests, (5) the government destroyed evidence, (6) the district court erred by not striking the prosecution's summary evidence, (7) the trial court erred by ruling that John McDermott's notes were not discoverable, (8) the district court erred by excluding the testimony of Harry Winderman, and (9) the indictment should be dismissed for governmental misconduct. We affirm.
 
 
 3
 I. Judge Fong was not biased.
 
 
 4
 Hayes argues that several comments made by Judge Fong evidence judicial bias. These include a threat of contempt, a comment made while overruling an objection, a comment made at sentencing, and a comment made while denying Hayes's motion for judgment of acquittal. We have reviewed all of the comments made by Judge Fong upon which Hayes relies and hold that they do not establish a deep-seated "antagonism that would make fair judgment impossible." Liteky v. United States, 114 S.Ct. 1147, 1157 (1994). Thus, Judge Fong was not biased.
 
 
 5
 II. Judge Fong did not impose a vindictive sentence.
 
 
 6
 A presumption of vindictiveness does not arise where a sentence imposed after a trial is greater than the sentence offered in a plea agreement. Alabama v. Smith, 490 U.S. 794, 795 (1989). In such a case, the burden is on the defendant to make a showing of actual vindictiveness. Taylor v. Kincheloe, 920 F.2d 599, 607 (9th Cir.1990).
 
 
 7
 Hayes argues that Judge Fong imposed a greater sentence than was offered in the plea agreement in order to punish him for requesting a jury trial. Hayes is mistaken. The greater sentence imposed in this case is clearly justified by the jury's verdict of guilt on seventeen counts instead of the two counts offered in the plea agreement. See id.
 
 
 8
 III. Hayes's Brady claims lack merit.
 
 
 9
 Hayes argues that the prosecution violated its Brady obligation by not producing documents held by the SEC and the Hawaii Attorney General's Office.
 
 
 10
 Alleged Brady violations are reviewed de novo. United States v. Manning, 56 F.3d 1188, 1197-98 (9th Cir.1995).
 
 
 11
 In Brady v. Maryland, the United States Supreme Court held that
 
 
 12
 the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.
 
 
 13
 373 U.S. 83, 87 (1963). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).
 
 
 14
 A. The SEC documents.
 
 
 15
 The prosecution did not violate its Brady obligation with respect to the SEC documents because Hayes had independent access to these documents. "Since suppression by the Government is a necessary element of a Brady claim, if the means of obtaining the exculpatory evidence has been provided to the defense, the Brady claim fails." United States v. Dupuy, 760 F.2d 1492, 1501 n. 5 (9th Cir.1985) (citation omitted). Here, Hayes had access to the SEC documents as early as May, 1991. See Declaration of Rory C. Flynn, p. 5, p 11. Hayes argues that he had no incentive to obtain these documents from the SEC because he intended to plead guilty. Nevertheless, because Hayes was provided with an opportunity to obtain these documents, there was no suppression by the government and thus no Brady violation.
 
 
 16
 B. Documents held by the Hawaii Attorney General's Office.
 
 
 17
 There was no Brady violation with respect to the documents held by the Hawaii Attorney General's Office because these documents were not material to Hayes's defense.
 
 
 18
 Brant Sugai's bank records, allegedly showing that commission payments were made to four government witnesses, were not material to Hayes's defense.[1] The district court properly held: "[I]t is unlikely that the result of the trial would have been different if Hayes had evidence of any payments to these witnesses, given the magnitude of the evidence against Hayes." Order Denying Motion for Dismissal of Indictment and for Judgment of Acquittal at 8. We further hold that Merle Lam's records, regarding the Anisman-Smith and Warren-Radcliff leases, were not material to Hayes's defense. We agree with the district court that these documents would not have defeated the government's case against Hayes.
 
 
 19
 IV. The district court properly found that the government did not destroy the tape recording of Hayes's 1985 presentation to investors in Hawaii.
 
 
 20
 A district court may impose sanctions against the government for destruction of evidence. Factors to be considered when determining an appropriate sanction include the "quality of the Government's conduct and the degree of prejudice to the accused." United States v. Loud Hawk, 628 F.2d 1139, 1152 (9th Cir.1979) (en banc) (Kennedy, J., concurring), cert. denied, 445 U.S. 917 (1980). A district court's factual findings in connection with a hearing on destruction of evidence are reviewed for clear error. United States v. Weinstein, 834 F.2d 1454, 1463 (9th Cir.1987).
 
 
 21
 Here, the district court found that the government was not responsible for recording over the tape and that it was likely the tape was erased before it was turned over to the government. This finding is not clearly erroneous. While Hayes presented expert testimony which suggested that the tape had been purposefully erased, he was unable to establish when the erasure took place. Under these circumstances, there is no defect in the quality of the government's conduct. See Loud Hawk, 628 F.2d at 1152 ("In weighing the conduct of the Government, the court should inquire whether the evidence was lost or destroyed while in its custody...."). The district court properly found that the government did not destroy the tape of Hayes's 1985 presentation.
 
 
 22
 V. The district court did not err by failing to strike the government's summary evidence.
 
 
 23
 Hayes argues that the district court erred by failing to strike the government's summary evidence. Specifically, Hayes asserts that the summaries were not admissible because they were based upon inadmissible hearsay evidence.
 
 
 24
 We review evidentiary issues for an abuse of discretion. United States v. Palmer, 3 F.3d 300, 304 (9th Cir.1993), cert. denied, 114 S.Ct. 1120 (1994). However, absent a contemporaneous objection, we review for plain error. Id.
 
 
 25
 The summary evidence at issue established that Hayes used the investors' money for personal expenses. Hayes did not contemporaneously object to the admission of the summaries. Rather, Hayes raised his objection at the close of the government's case. Hayes argues that his failure to timely object should be excused because the government misrepresented to the district court that the summaries were entirely based upon admissible evidence. Thus, Hayes argues, this court should review for an abuse of discretion, not plain error.
 
 
 26
 Hayes's argument is not persuasive. Hayes has not explained why he did not object to the summary evidence during his cross-examination of the government agent who prepared the summaries and testified as to their content. It was during this cross-examination that Hayes elicited testimony that the summaries were partially based on hearsay statements. Because Hayes had an opportunity to timely object and failed to do so, we will review for plain error.
 
 
 27
 Assuming there was an "error" that was "plain," Hayes has failed to establish that his "substantial rights" were affected. Hayes has presented only a few examples of allegedly inadmissible evidence used to prepare the summaries. Under these facts, Hayes has not established that the outcome of his trial was affected. See United States v. Olano, 113 S.Ct. 1770, 1778 (1993).
 
 
 28
 In conclusion, the district court did not commit plain error by failing to strike the summary evidence.
 
 
 29
 VI. We need not decide whether John McDermott's notes were discoverable.
 
 
 30
 Hayes claims: "The trial court erred by ruling that John McDermott's notes in connection with his meeting with Merle Lam were not discoverable." Appellant's Opening Brief at 45. Yet, Hayes then concedes that "[d]uring discovery in the present action, the United States Attorney's office produced these same notes to Mr. Hayes." Id. at 46. Moreover, these notes are included in Appellant's Excerpts of Record. Thus, this issue is moot.
 
 
 31
 VII. The district court did not err by excluding the testimony of Apollo's corporate counsel, Harry Winderman.
 
 
 32
 Hayes offered Winderman's testimony to establish the value and productivity of the oil leases, and to impeach a government witness, Michael Radler.
 
 
 33
 The district court properly excluded Winderman's testimony to the extent that it was offered to prove the value and productivity of the oil leases. Winderman did not have personal knowledge of these facts. Rather, Hayes stated that Winderman learned these facts by reviewing reserve reports on the leases. See Fed.R.Evid. 602.
 
 
 34
 To the extent Hayes offered Winderman's testimony to impeach Mr. Radler, the district court did not abuse its discretion in excluding this testimony. Hayes argued to the district court that Radler had testified falsely that he did not prepare reserve reports for the Warren-Radcliff lease. Hayes offered Winderman's testimony to show that Radler did prepare these reports. A review of Mr. Radler's testimony undermines Hayes's claim. Radler merely testified that he could not recall whether he turned over records regarding the Warren-Radcliff lease to the SEC. The district did not err by excluding Winderman's impeachment testimony. See United States v. Chu, 5 F.3d 1244, 1249 (9th Cir.1993), cert. denied, 114 S.Ct. 1549 (1994) ("The district court has broad discretion over whether to admit extrinsic evidence to rebut a witness' direct testimony, particularly on a matter collateral to the case.").
 
 
 35
 VIII. Governmental misconduct.
 
 
 36
 Hayes contends that three acts of governmental misconduct warrant dismissal of the indictment. These acts are (1) agent Southerland's false statement to the grand jury that Apollo did not own the Pardue lease, (2) agent Southerland's false statement to the grand jury that the Warren-Radcliff and Anisman-Smith leases were limited partnerships, and (3) agent Southerland's false statement in a pretrial affidavit.
 
 
 37
 Agent Southerland testified to the grand jury that Apollo did not own the Pardue lease. Southerland later admitted that he was mistaken and that Apollo did own the Pardue lease. Southerland explained that he did not discover this mistake until two months after the grand jury convened. At most, Hayes has established that Southerland made an honest mistake which does not support a claim of governmental misconduct.
 
 
 38
 Southerland testified to the grand jury that the Warren-Radcliff and Anisman-Smith leases were limited partnerships. Southerland later testified that he misunderstood the grand juror's question and that the leases were not limited partnerships. Again, Hayes fails to establish that Southerland intentionally misled the grand jury. This mistaken testimony by Southerland does not require dismissal of the indictment.
 
 
 39
 Southerland stated in a pretrial affidavit: "It is my understanding, based on conversations with CAROL RUSSO HAYES [Esperanza] and others, that the documents she referred to in her SEC Deposition were thrown away and not delivered either to the SEC or to the FBI." Hayes argues that Esperanza's deposition testimony to the SEC contradicts Southerland's statement. Hayes is mistaken. While Esperanza did produce some documents at the SEC deposition, she also testified:
 
 
 40
 Q. Were there any other documents in your possession, at any time, that were responsive to the subpoena, but not produced today?
 
 
 41
 * * *
 
 
 42
 [Esperanza]: Everything else, I don't have, I threw out or I didn't take copies of.
 
 
 43
 Southerland's affidavit statement is consistent with Esperanza's deposition testimony.
 
 
 44
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In Appellant's Opening Brief, Hayes's counsel represents that these four witnesses testified "that they received no commission for their sales effort." Appellant's Opening Brief at 33. Again, in Apppellant's Reply Brief, Hayes's counsel represents: "But all four witnesses flatly denied receiving commission payments." Appellant's Reply Brief at 12. Subsequent to oral argument, Hayes's counsel filed a letter brief admitting that only one witness directly stated she received no commissions. See Appellant's Supplemental Letter Brief