122 F.3d 1074
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appllee,
v.
Lloyd GAMBELL (a.k.a."L-Mac"), Defendant-Appellant.
 No. 96-10490.
 United States Court of Appeals, Ninth Circuit.
 Sept. 4, 1997.
Argued and Submitted Aug. 15, 1997
 
 1
 Appeal from the United States District Court for the Eastern District of California
 
 
 2
 TASHIMA, THOMAS, C.J., and SEDWICK,** D.J.
 
 
 3
 MEMORANDUM*
 
 
 4
 Lloyd Gamble (a.k.a."L-Mac") appeals his jury conviction for conspiracy to distribute and to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Gamble argues that there was insufficient evidence to support his conspiracy conviction and that venue was improper in the Eastern District of California. Gamble also complains that the district court erroneously instructed the jury by paraphrasing the indictment in such a way that it created the impression that he was separately charged with possession or that mere possession would establish the existence of the conspiracy.
 
 Discussion
 
 5
 First, Gamble argues that the evidence presented at trial did not establish the existence of a conspiracy. Gamble failed to challenge the sufficiency of the evidence at trial. In United States v. Chu, 5 F.3d 1244 (9th Cir.1993), cert. denied, 511 U.S. 1035 (1994), this court explained:
 
 
 6
 Typically, in reviewing a challenge to the sufficiency of the evidence, we ask whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." Where the defendant fails to move for a judgment of acquittal under Fed.R.Crim.P. 29(a) on the ground that the evidence is insufficient to support the verdict, however, we examine the issue "under a more rigorous standard of review for plain error to prevent a 'miscarriage of justice.' "
 
 
 7
 Id. at 1248 (citations omitted). This court noted in United States v. Vizcarra-Martinez, 66 F.3d 1006, 1010 (9th Cir.1995), that:
 
 
 8
 [T]he application of the miscarriage of justice standard to insufficiency of the evidence cases could lead to difficult problems for a court. We would certainly be reluctant to affirm a conviction and send a defendant to prison or his death if the record clearly showed that the evidence was insufficient. Yet, even under our ordinary test--the standard applicable when the defendant makes all the proper motions--we cannot reverse unless there is a clear showing as to insufficiency: we must affirm if any rational trier of fact could have found the evidence sufficient. Thus, it is difficult to imagine just what consequences flow from our application of the two different standards or to envision a case in which the result would be different because of the application of one rather than the other of the standards.
 
 
 9
 As in Vizcarra-Martinez, there is adequate evidence to convict Gamble, even under the standard ordinarily used when the defendant makes an objection regarding the insufficiency of evidence at trial. Thus, in the instant case, it does not matter whether there is a practical difference between the standards.
 
 
 10
 To prove a conspiracy, the government must show an agreement to commit a crime, knowledge of the conspiracy's objectives, and an intent to further them. United States v. Gil, 58 F.3d 1414, 1423 (9th Cir.1995), cert. denied, --- U.S. ---, 116 S.Ct. 430 (1995). Agreement may be shown by evidence of coordinated activity between the defendant and the alleged co-conspirators. United States v. Mesa-Farias, 53 F.3d 258, 260 (9th Cir.1995). In addition, the agreement need not be explicit, but may be inferred fromthe facts and circumstances of the case. United States v. Monroe, 552 F.2d 860, 862 (9th Cir.1977), cert. denied, 431 U.S. 972 (1977).
 
 
 11
 The government's theory of the case is that Gamble and codefendent Leroy Shriver (a.k.a."Albert") obtained cocaine base in Bakersfield and distributed it in Las Vegas where cocaine sold for a higher price. At trial, the government offered the testimony of Jones, an informant, to establish that Gamble and Shriver worked together to distribute cocaine. More specifically, Jones described the coordinated drug trafficking of Gamble and Shiver as follows:
 
 
 12
 Q. And you said that Mr. Gamble was always with a friend?
 
 
 13
 A. Yes, he was.
 
 
 14
 Q. Who was that person?
 
 
 15
 A. A guy called Albert. They stayed together 24--- every time I see them they was together.
 
 
 16
 Q. Albert?
 
 
 17
 A. Albert. They were never apart.
 
 
 18
 Q. Did you get cocaine base from Albert?
 
 
 19
 A. Well, I'll tell you how it went. L-Mac, he take--
 
 
 20
 (Colloquy between the court and counsel)
 
 
 21
 A. What the deal, L-Mac take and give it to Albert, and Albert sets it for him, do you understand where I'm coming from? But I see it coming from him, from L-Mac. He take it and give it to Albert. So I sit and just watch. I don't say nothing, I just observed the transaction of how they are doing. Jones also testified that on the morning of November 5, 1994, Gamble asked him to keep 15 "oz's" of cocaine for him until he could return from Bakersfield, California, with "a package." Jones stated that he understood the phrase "a package" to mean drugs. In addition, the government also offered the following evidence. Cooperating witness Terry Ellis testified regarding Gamble's cocaine base trafficking in both Las Vegas and Bakersfield. Police officers testified about the November 5, 1994, incident and a May 11, 1995, incident in which a trained narcotics detection dog alerted to the odor of controlled substances in a vehicle stopped in Bakersfield occupied by Gamble, Shiver, and Gamble's brother, Kevin Turner. Although the three men admitted to smoking marijuana inside the car during the trip from Las Vegas to Bakersfield, no drugs were found. The government also, in an attempt to establish that extensive contact is indicative of coordinated activity between Bakersfield and Las Vegas, introduced evidence that Gamble frequently telephoned Las Vegas from Bakersfield and that in Gamble's wallet and residence, which were searched upon his arrest on June 6, 1995, he had Las Vegas business cards and receipts.
 
 
 22
 When viewed in a light most favorable to the prosecution, a rational trier of fact could infer from the facts and circumstances that Gamble and Shiver agreed to possess and distribute cocaine base. Moreover, the decision to go to Bakersfield to retrieve "a package," as well as the decision to leave 15 ounces of cocaine with Jones for safe keeping, illustrate knowledge of and intent to further the conspiracy's objectives to distribute and possess cocaine base. If there is an evidentiary basis for the decision reached by the jury, it is immaterial that this court might draw a contrary inference or feel another conclusion is more reasonable. United States v. Brown, 522 F.2d 10, 11 (9th Cir.1975). A review of the record reveals that, under either the rational trier of fact or the plain error standard, there was sufficient evidence to convict Gamble for conspiracy to distribute and to possess with the intent to distribute cocaine base.
 
 
 23
 Next, Gamble argues that venue was not proper in the Eastern District of California. However, because Gamble did not object to venue before the jury returned its verdict of guilty, we find that venue was waived. See United States v. Powell, 498 F.2d 890, 891 (9th Cir.1974), cert. denied, 419 U.S. 866 (1974).
 
 
 24
 Last, Gamble complains that the district court erroneously instructed the jury by paraphrasing the indictment. The indictment charged Gamble with conspiring "to distribute and possess with the intent to distribute cocaine base." After initially describing the charge against Gamble accurately, the district court intermittently used the word "possession" instead of "possess." Also, the court on one occasion used the word "distribution" rather than "distribute." Gamble argues that the district court erred by using the word "possession," the noun form, instead of the verb "to possess." Gamble contends that "This form of the word makes the court's paraphrase of the indictment sound as though possession of cocaine were a separate offense, perhaps, or that possible possession would establish conspiracy."
 
 
 25
 Gamble acknowledges that, because he did not object to the district court's instructions at trial, this court's review is for plain error only. United States v. Whitmore, 24 F.3d 32, 34 (9th Cir.1994). In Whitmore, we wrote:
 
 
 26
 The Supreme Court recently fleshed out the requirements for obtaining a reversal based upon Rule 52(b) plain error. First, there must "indeed be an 'error'. Deviation from a legal rule is 'error' unless the rule has been waived." Second, the error must be " 'plain'. 'Plain' is synonymous with 'clear' or, equivalently, 'obvious'." Third, the error must " 'affec[t] substantial rights'." That is, "the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." As the Court noted, the inquiry under the third prong is identical to "harmless error" analysis under Rule 52(a), "with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. In most cases, the Court of Appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial."
 
 
 27
 Even if a defendant meets these threshold requirements, however, an appellate court is not obligated to reverse the conviction. "The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' "
 
 
 28
 Id. at 34-35 (citations and footnotes omitted).
 
 
 29
 Assuming, the district court made an error and the error was plain, Gamble has failed to establish prejudice. He provides no reason to believe that the error affected the outcome of the proceedings. "On appeal, the adequacy of jury instructions is not determined by the giving of any one instruction, but by examining the instructions as a whole." United States v. Ancheta, 38 F.3d 1114, 1116 (9th Cir.1994). A review of the record reveals that the district court repeatedly instructed the jury that a single crime--conspiracy--was charged and that neither the indictment nor the jury verdict form use the noun "possession." Further, the district court, in response to a juror's question, dispelled any confusion by affirming that there was only one charge and one indictment. Any flaws in the district court's instructions do not rise to the level of plain error.
 
 
 30
 The judgment of the district court is AFFIRMED.
 
 
 
 **
 The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3